895 So.2d 441 (2005)
Owran GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-1584.
District Court of Appeal of Florida, Fourth District.
January 26, 2005.
Rehearing Denied March 23, 2005.
*442 Michael B. Cohen, Fort Lauderdale, for appellant.
No appearance required for appellee.
FARMER, C.J.
In taking defendant's plea several years ago, the Judge demonstrably failed to advise him of the immigration consequences of a conviction.[1] The trial court denied defendant's recent motion to withdraw the plea on account of that failure, agreeing with the State that because deportation proceedings have not yet been begun he has failed to show prejudice from the omission. We reverse for an evidentiary hearing.
In an attempt to attain permanent residency status, defendant's spouse filed an I-601 application for a waiver of grounds of excludability. This procedure allows an alien eligible for deportation to have the grounds for deportation "adjusted". Westover v. Reno, 202 F.3d 475, 481 (1st Cir.), cert. denied, 531 U.S. 813, 121 S.Ct. 46, 148 L.Ed.2d 16 (2000). The INS denied this application on account of the conviction.
The motion to withdraw the plea alleged the above facts and stated that defendant would not have pleaded nolo if he had known the actual INS consequences. He asserted that because of the denial of permanent residency status he is now subject to deportation. The state responded that he had not made a prima facie showing of prejudice, arguing that he had failed to show that any deportation would result. In reply, he asserted (and in fact offered expert testimony) that as a result of statutory changes made by Congress after September 11, 2001, the new Department of Homeland Security would now as a matter of course ultimately deport him because of this single conviction. He contends that the denial of the application *443 demonstrates the sufficiency of the threat of deportation. We agree.
It does not seem to us that the term "threat of deportation" in Peart v. State, 756 So.2d 42, 44 (Fla.2000), was used in the sense the State argues. We readily admit that the actual commencement of proceedings by the INS eliminates any speculation about the actuality of being deported. But the commencement of legal proceedings to deport does more than merely threaten deportation. Actually commencing procedures to expel an alien indicates that deportation from the United States has moved beyond any mere threat and has instead become reality.[2] And therein lies the distinction underscored by Peart's reliance on threaten to show prejudice.
Under the standard argued by the State, only those actually in the process of being deported are prejudiced. But if the supreme court meant the test of prejudice to be limited to those already in the process of being deported, why even use the term threaten and thereby introduce the possibility of something less than actual deportation? Why not just say only those in the process of being deported are sufficiently prejudiced? Using the initiation of proceedings as the touchstone of threaten thus misses the supreme court's actual thought. It transforms the idea conveyed by the court from capable of being deported to the different idea of now being deported.
There is a standard meaning of threaten revealing the true intendment. In addition to expressing an intention to inflict harm, the dictionary definitions for threaten include these: to be a source of danger, to menace; to give signs or warning of, to portend; to indicate danger or harm. See AMERICAN HERITAGE DICTIONARY (3rd ed.) 1868. All of these senses convey the thought of possibility rather than actuality. The context strongly suggests that it is in these senses that the Peart court used the term:
"in order ... to obtain postconviction relief based on a rule 3.172(c)(8) violation, the defendant had to prove that the trial court did not provide advice regarding the possible immigration consequences of the plea and resultant prejudice. In order to show prejudice ... defendants had to establish that they did not know that the plea might result in deportation, that they were `threatened' with deportation because of the plea, and that had they known of the possible consequence they would not have entered the plea." [e.s., c.o.]
756 So.2d at 47.
To illustrate what constitutes the meaning of threat as used in that case, Peart pointed to two of our own decisions with obvious approval. Id. In Marriott v. State, 605 So.2d 985, 987 (Fla. 4th DCA 1992), we held that the legal possibility of deportation under federal immigration law was a sufficient showing of prejudice. The fact that we were there dealing with the legal possibility of deportation, not the actual filing, is clear from our opinion:
"Furthermore, it is undisputed that appellant's entry of a nolo contendere plea subjected him to the possibility of deportation. We hold that the threat of deportation was sufficient for a showing of prejudice as required under Simmons v. State, 489 So.2d 43 (Fla. 4th DCA 1986)." [e.s.]
605 So.2d at 987. Indisputably the word possibility in the first sentence is a referent *444 of threat in the second. Additionally, in Spencer v. State, 608 So.2d 551 (Fla. 4th DCA 1992), our finding of a threat was based solely on an appellate immigration decision finding defendant deportable, the very circumstance that exists in this case. There was no suggestion that proceedings to deport him had actually been begun. From these two examples approved by Peart we know that threaten relates to the legal possibility of deportation and does not require the initiation of actual deportation proceedings.[3]
It makes eminent sense to use the legal possibility of deportation as the essence of threaten. It serves to insure that only those who are truly capable of being deported under the law would be allowed to complain of a failure to give the immigration warning. See Peart, 756 So.2d at 46 ("defendant must be threatened with deportation resulting from the plea"); see also State v. Seraphin, 818 So.2d 485, 489 (Fla.2002) ("defendant threatened with deportation [e.s.] must demonstrate that he or she was prejudiced in the process by entering the plea because the trial court failed to provide the information required by rule 3.172(c)(8)."). Yet it also recognizes that if a person is subject to deportation under existing law, the absence of pending deportation proceedings suggests little more than the failure of INS to get around to it yet, rather than to imply that the person may not eventually be deported. Indeed, defendant argues, in effect, that under current law the legal possibility of deportation bears the same relationship to being deported that a conviction bears to sentencing.
Some decisions since Peart have held that nothing less than the initiation of a deportation proceeding will constitute sufficient prejudice by reason of a "threat of deportation." See Kindelan v. State, 786 So.2d 599 (Fla. 3d DCA 2001) (holding that the denial of a request to adjust immigration status and a finding that movant was excludable is not a "threat of deportation"); Curiel v. State, 795 So.2d 180 (Fla. 3d DCA 2001) (placing a detainer on the incarcerated movant was not a "threat of deportation"); Saldana v. State, 786 So.2d 643 (Fla. 3d DCA 2001) (finding that notice a detainer would be placed on the movant and an investigation into deportability initiated was not a threat of "actual deportation"). We disagree with that reading and are therefore in conflict with these decisions on this issue.
In sum, we think defendant made out a prima facie case of prejudice under Peart, 756 So.2d at 47 ("to show prejudice ... defendants had to establish that they did not know that the plea might result in deportation, that they were `threatened' with deportation because of the plea, and that had they known of the possible [e.s.] consequence they would not have entered the plea."). In fact he has done more than allege a mere possibility. He has suggested proof that he will now actually be deported as a direct result of a plea that he never would have made if he had known the legal consequences. As we held in Spencer, he is entitled to an evidentiary hearing to make his case.
We add that at the evidentiary hearing defendant will have to offer evidence that the present conviction made him eligible for deportation. He will necessarily also *445 have to show precisely when he learned of the threat of deportation as required by Peart. Defendant had only a two-year window to file for relief under rule 3.172(c)(8). Peart held that the two-year time limit begins on "the day a defendant gains (or should gain) knowledge of the threat." 756 So.2d at 46. It is not clear to us when defendant claims he actually learned of the threat of deportation, so his proof will have to make that date evident.
Reversed for evidentiary hearing.
WARNER, J., concurs.
STONE, J., dissents with opinion.
STONE, J., dissenting.
In my judgment, the trial court correctly denied the motion because Green did not demonstrate that he is under a threat of deportation. The denial of his application for permanent status, taken alone, is not sufficient evidence of "threat" from which to conclude that deportation will follow as a matter of course.
I would follow those opinions that recognize that nothing less than notice that the government is initiating a deportation proceeding is sufficient to constitute a "threat of deportation." Wigley v. State, 851 So.2d 784 (Fla. 4th DCA 2003) (filing an action to revoke naturalization based on conviction is not sufficient threat of deportation); State v. Carmona, 827 So.2d 342 (Fla. 3d DCA 2002) (proceeding to revoke naturalization is not a threat of deportation). See also Kindelan v. State, 786 So.2d 599 (Fla. 3d DCA 2001) (the denial of a request to adjust immigration status and a finding that movant was excludable is not a threat of deportation); Curiel v. State, 795 So.2d 180 (Fla. 3d DCA 2001) (placing a detainer on the incarcerated movant was not a threat of deportation); Saldana v. State, 786 So.2d 643 (Fla. 3d DCA 2001) (notice of a detainer would be placed on the movant and an investigation into deportability initiated was not a threat of "actual deportation"). It seems to me that to hold otherwise is to speculate that the government will initiate deportation proceedings.
NOTES
[1] The transcript shows that the plea Judge failed to give any immigration warning before taking the plea.
[2] Does firing the gun merely threaten danger, or does it signify something qualitatively different?
[3] Wigley v. State, 851 So.2d 784 (Fla. 4th DCA 2003), is not in conflict with our holdings discussed above. In that case, defendant is an American citizen. Unless the INS is successful in revoking her naturalization, she is not under threat of deportation. We agreed with the trial court's finding that it was improper to presume that the INS will prevail in its attempt to revoke citizenship.