944 So.2d 208 (2006)
STATE of Florida, Petitioner,
v.
Owran GREEN, Respondent.
No. SC05-687.
Supreme Court of Florida.
October 26, 2006.
*210 Charles J. Crist, Jr., Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and James J. Carney, Senior Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Michael B. Cohen, Fort Lauderdale, FL, for Respondent.
PARIENTE, J.
We have for review Green v. State, 895 So.2d 441 (Fla. 4th DCA 2005), which is in express and direct conflict with three decisions of the Third District Court of Appeal on the application of our decision in Peart v. State, 756 So.2d 42 (Fla.2000). In Peart, we held that in moving to withdraw a guilty or no contest plea on grounds that the trial court did not advise the defendant that the plea could result in deportation, the defendant must demonstrate that he or she has been threatened with deportation because of the plea. See id. at 48. The conflict issue is whether anything "less than the initiation of a deportation proceeding will constitute sufficient prejudice by reason of a `threat of deportation.'" Green, 895 So.2d at 444 (quoting Peart, 756 So.2d at 44). In the conflict cases, the Third District ruled that circumstances falling short of initiation of deportation proceedings were insufficient to establish threatened deportation. See Curiel v. State, 795 So.2d 180, 181 (Fla. 3d DCA 2001); Saldana v. State, 786 So.2d 643, 645 (Fla. 3d DCA 2001); Kindelan v. State, 786 So.2d 599, 600 (Fla. 3d DCA 2001). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
We accepted this case for review to resolve the conflict. However, our review has alerted us to larger problems in applying Peart fairly, efficiently, and with adequate regard for finality. Because of these unintended consequences, we recede from our holding in Peart that the two-year period for moving to withdraw a plea on grounds that the trial court failed to advise the defendant that the plea could result in deportation begins "when the defendant has or should have knowledge of the threat of deportation based on the plea." 756 So.2d at 46. Instead, pursuant to Florida Rule of Criminal Procedure 3.850(b), the limitations period commences when the judgment and sentence become final unless the defendant could not, with the exercise of due diligence, have ascertained within the two-year period that he or she was subject to deportation. Further, the defendant must establish only that he or she is subject to deportation because of the plea, not, as we held in Peart, that he or she has been specifically threatened with deportation. These changes govern in any case in which a trial court accepts a plea of guilty or no contest on or after the date of this decision. Application of this holding to older cases is addressed in the conclusion to this opinion.
In light of our holding in this case, and based on procedural defects in Green's trial court pleadings which we discuss below, we quash the Fourth District's decision in this case and remand for proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
In September 2003, Green filed a sworn rule 3.850 motion seeking to vacate the no contest plea to lesser included offenses of assault and battery that he entered in 1993. Green asserted that neither his trial *211 counsel nor the trial court advised him that the plea would render him subject to deportation as required by Florida Rule of Criminal Procedure 3.172(c)(8).[1] Further, Green claimed that he learned about the adverse immigration consequences when he "recently" consulted an immigration attorney. The motion included documentation showing that a Form I-601 application to the Immigration and Naturalization Service (INS) for a waiver of grounds for excludability by Green's wife was denied in July 2003.
The State asserted in a written response that the motion was facially deficient because it failed to allege that Green was actively being deported by the United States government. The response also pointed to a separate offense of solicitation of prostitution identified in the I-601 application attached to the motion that could also support deportation. On October 14, 2003, the trial court entered an order summarily denying Green's motion "for the reasons stated in the State Attorney's Response." Seven days after entry of the order, Green's counsel filed an unsworn reply to the State's response asserting that (1) Green is threatened with deportation because the denial of the waiver of grounds for excludability would cause the Department of Homeland Security to begin deportation proceedings, (2) "[t]he Defendant intends to produce an expert . . . who can further expound on this issue," and (3) the defense expected its expert to testify that the crime of solicitation of prostitution falls within a "petty offense exception" and is not by itself an excludable offense. On February 13, 2004, defense counsel filed a motion to set aside the court order on grounds that he did not receive a copy of the order before he filed his reply. In an order dated February 24, 2004, the trial court denied the motion to set aside the order. Green commenced an appeal.
Relying on the allegations in Green's unsworn, untimely reply, the Fourth District reversed the summary denial of his rule 3.850 motion and remanded for an evidentiary hearing. The court pointed to Peart's approval of district court decisions holding that to show prejudice, defendants had to establish "that they were `threatened' with deportation because of the plea, and that had they known of the possible consequence they would not have entered the plea." Green, 895 So.2d at 443 (quoting Peart, 756 So.2d at 47). The Fourth District determined that Green demonstrated a sufficient threat of deportation in asserting that as a result of statutory changes following the September 11, 2001, terrorist attacks, the Department of Homeland Security would "as a matter of course" deport him. Id. at 442. The court stated:
It does not seem to us that the term "threat of deportation" in Peart v. State, 756 So.2d 42, 44 (Fla.2000), was used in the sense the State argues. We readily admit that the actual commencement of proceedings by the INS eliminates any speculation about the actuality of being *212 deported. But the commencement of legal proceedings to deport does more than merely threaten deportation. Actually commencing procedures to expel an alien indicates that deportation from the United States has moved beyond any mere threat and has instead become reality. And therein lies the distinction underscored by Peart's reliance on threaten to show prejudice.
. . . .
In sum, we think defendant made out a prima facie case of prejudice under Peart. . . . In fact he has done more than allege a mere possibility. He has suggested proof that he will now actually be deported as a direct result of a plea that he never would have made if he had known the legal consequences. . . . [H]e is entitled to an evidentiary hearing to make his case.
Id. at 443-44 (footnote omitted). In dissent, Judge Stone stated that he would follow precedent holding that notice that the government is initiating a deportation proceeding is necessary to demonstrate that the defendant is threatened with deportation. Judge Stone concluded that "to hold otherwise is to speculate that the government will initiate deportation proceedings." Id. at 445 (Stone, J., dissenting).
This Court granted discretionary review based on the express, direct conflict acknowledged by the Fourth District in the majority opinion below:
Some decisions since Peart have held that nothing less than the initiation of a deportation proceeding will constitute sufficient prejudice by reason of a "threat of deportation." See Kindelan v. State, 786 So.2d 599 (Fla. 3d DCA 2001) (holding that the denial of a request to adjust immigration status and a finding that movant was excludable is not a "threat of deportation"); Curiel v. State, 795 So.2d 180 (Fla. 3d DCA 2001) (placing a detainer on the incarcerated movant was not a "threat of deportation"); Saldana v. State, 786 So.2d 643 (Fla. 3d DCA 2001) (finding that notice a detainer would be placed on the movant and an investigation into deportability initiated was not a threat of "actual deportation"). We disagree with that reading and are therefore in conflict with these decisions on this issue.
Green, 895 So.2d at 444.

ANALYSIS
In the discussion that follows, we review our opinion in Peart, explore the problems that have arisen from application of Peart in the lower courts, and explain our decision to abandon several of the pleading and proof requirements of Peart in favor of the more objective criteria in rule 3.850. Finally, we address the Fourth District decision in this case.

I. PEART V. STATE

In Peart, we reviewed a decision of the Third District that consolidated five appeals. Four defendants, two who were in custody and two who were not, filed petitions for writs of error coram nobis. Another defendant, who was in custody, moved for postconviction relief under rule 3.850. All five sought to withdraw their pleas on grounds that they were not advised by the trial court of immigration consequences of the pleas. Peart, 756 So.2d at 44. The Third District ruled that the defendants not in custody did not satisfy the requirements for error coram nobis because the failure to advise the defendants of immigration consequences was an error of law and coram nobis was available to address errors of fact or newly discovered evidence. The district court ruled that the defendants in custody who sought the writ should have filed their claims under *213 rule 3.850, but that their claims were untimely because they were filed more than two years after their judgments and sentences became final. Finally, the Third District ruled that the defendant in custody who filed his claim under rule 3.850 would have to file a new motion alleging that, had he declined the plea offer and gone to trial, he probably would have been acquitted. Id. (citing Peart v. State, 705 So.2d 1059, 1062-63 (Fla. 3d DCA 1998)).
Our decision in Peart incorporated three holdings, one for each of the procedural postures. First, consistent with our then recent decision in Wood v. State, 750 So.2d 592 (Fla.1999), we determined that rule 3.850 would henceforth be the proper postconviction vehicle in which to raise a violation of rule 3.172(c)(8) regardless of whether the defendant is in custody. Peart, 756 So.2d at 46. Second, we held that the two-year limitations period under rule 3.850 begins to run "when the defendant has or should have knowledge of the threat of deportation based on the plea." Id. Third, the Court held that a defendant raising this claim need not prove a likelihood of acquittal had the case gone to trial in order to establish prejudice as required for relief under Florida Rule of Criminal Procedure 3.172(i). Peart, 756 So.2d at 47-48.[2]
On the second of Peart's three holdings, the Court stated that
in order for a defendant to establish a prima facie case for relief, the defendant must be threatened with deportation resulting from the plea. Since the day the defendant gains (or should gain) knowledge of the threat of deportation is the first day the defendant can actually articulate a prima facie case, it stands to reason that the day the defendant learns of the threat should likewise start the running of the two-year limitation period.
Id. at 46 (citation omitted). On the showing of prejudice required, we approvingly cited district court decisions holding that
to show prejudice pursuant to a rule 3.172(c)(8) violation, defendants had to establish that they did not know that the plea might result in deportation, that they were "threatened" with deportation because of the plea, and that had they known of the possible consequence they would not have entered the plea.
Id. at 47.
In a partially dissenting opinion in which he was joined by Chief Justice Harding and Justice Quince, Justice Wells asserted that the majority's rejection of a requirement that the defendant establish probable acquittal had the case gone to trial would result in stale claims, contrary to the requirement in rule 3.850 that motions be filed within two years after the judgment and sentence become final. Id. at 52 (Wells, J., concurring in part and dissenting in part). Justice Wells pointed out that neither of the exceptions to the two-year deadlinenewly discovered evidence or assertion of a fundamental constitutional right established only after the two-year periodapplied in any of the five cases. Id.

II. APPLICATION OF PEART

The first of our three holdings in Peart was merely an extension of our decision in Wood to postconviction motions raising rule 3.172(c)(8) violations. In Wood, this Court eliminated the requirement in rule 3.850 that the defendant be in custody, which had compelled defendants not in *214 custody to use the writ of error coram nobis in postconviction challenges to their convictions. 750 So.2d at 595. Thus, the Court ruled in Peart that "since Wood both custodial and noncustodial defendants have been required to employ rule 3.850 to raise their claims" under rule 3.172(c)(8). 756 So.2d at 46.
However, the second holding in Peart, that "the limitation period begins to run when the defendant learns or should have learned (whichever is earlier) of the threat of deportation based on the plea," id. at 48, contravened language in Wood holding that claims formerly raised via error coram nobis are subject to the time periods in rule 3.850:
Limiting claims cognizable under coram nobis to the same time limit that is applied to rule 3.850 motions places both such claimants on equal footing and prevents unwarranted circumvention of the rule. We hasten to add that the discovery of facts giving rise to a coram nobis claim will continue to be governed by the due diligence standard, and that coram nobis claims cannot breathe life into postconviction claims that have previously been held barred.
Wood, 750 So.2d at 595 (citation omitted). By starting the two-year clock with actual or imputed notice of a threatened deportation rather than finality of the judgment and sentence, as in rule 3.850(b), Peart authorized claims that otherwise would have been time-barred under the rule.
District court decisions demonstrate that as applied, Peart actually deters defendants from raising rule 3.172(c)(8) claims within the first several years after a plea. The claim does not ripen until a defendant is threatened with deportation. The conflict issue in this case reflects division in the district courts on what constitutes "threatened deportation." However, under any of the thresholds for threatened deportation applied by the district courts, many motions claiming rule 3.172(c)(8) violations that have been filed long after the two-year period governing other postconviction claims under rule 3.850(b) are nonetheless timely under Peart.
Cases in which initiation of deportation proceedings constitutes the threatened deportation involve some of the longest delays. In Ghanavati v. State, 820 So.2d 989 (Fla. 4th DCA 2002), the Fourth District ruled that a motion to withdraw a plea entered fourteen years earlier was timely because it was filed within two years of the date when the defendant learned that INS had commenced a deportation action against him. Id. at 990. In its 2002 decision in Alfaro v. State, 828 So.2d 1056 (Fla. 3d DCA 2002), the Third District ruled that a motion to withdraw a 1991 plea alleging that the defendant received notice to appear in deportation proceedings was timely. Id. at 1058. In State v. Lindo, 863 So.2d 1237 (Fla. 4th DCA 2003), the Fourth District determined that a 2002 motion to withdraw a 1990 plea, filed less than a year after the defendant received notice to appear in deportation proceedings, was timely. Id. at 1239. Likewise, in the 2000 decision in Gray v. State, 774 So.2d 30 (Fla. 2d DCA 2000), the trial court denied a postconviction motion claiming a rule 3.172(c)(8) violation on a 1990 plea on grounds that it was untimely and not subject to the exception for newly discovered evidence. The Second District reversed, concluding that the motion was filed within two years of the time when the defendant had or should have had knowledge of the threat of deportation. Id. at 31; see also Martinez v. State, 842 So.2d 900, 901 (Fla. 2d DCA 2003) (concluding that motion filed "quickly" after INS notice to appear in deportation proceedings, but nine years after plea, "cannot be ruled untimely on its face").
*215 Even under the Fourth District's less exacting standard for establishing a threatened deportation in this case, "timely" motions alleging a rule 3.172(c)(8) violation can be filed many years after the plea. Green filed his motion to withdraw his 1993 plea in 2002, within months after denial of the application to waive grounds for excludability. Similarly, in Alguno v. State, 892 So.2d 1200, (Fla. 4th DCA 2005), the Fourth District ruled that a 2003 motion seeking to withdraw a 1995 plea and alleging that INS had denied his application for naturalization in 2001 stated a legally cognizable claim. Id. at 1201-02.
Precedent in which motions have been denied as premature also reflect the delay inherent in Peart's criteria for a prima facie case. In Saldana v. State, 786 So.2d 643 (Fla. 3d DCA 2001), the court ruled that notice that a detainer would be placed on the movant and an investigation into deportability initiated did not constitute threatened deportation based on a 1990 plea. Id. at 645. In Kindelan v. State, 786 So.2d 599 (Fla. 3d DCA 2001), the Third District ruled insufficient a motion to withdraw a 1987 plea alleging that when Kindelan "applied to adjust his immigration status, INS advised him that he was excludable from the United States due to his conviction." Id. at 600. In State v. Gaston, 911 So.2d 257 (Fla. 3d DCA 2005), notice invoking discretionary review filed, No. SC05-1901 (Fla. Oct. 14, 2005),[3] in which the Third District certified conflict with Green, the court ruled that a motion to withdraw a plea which alleged that an immigration attorney advised the defendant that he would be subject to deportation if he applied for residency did not state a prima facie case for relief. Id. at 258; see also Aparicio v. State, 893 So.2d 630, 631 (Fla. 3d DCA 2005) (ruling premature a motion to withdraw a 1998 plea alleging that defense was advised by immigration counsel that if he applied for citizenship or tried to visit his son in Cuba he would at least be detained); Wigley v. State, 851 So.2d 784, 785 (Fla. 4th DCA 2003) (affirming denial of "premature" motion alleging that federal government had instituted action to revoke naturalization). As courts have explicitly held in some of these cases, the denial of the rule 3.850 motion is "without prejudice to the defendant seeking relief when the `threat of deportation' is more demonstrable." Wigley, 851 So.2d at 785 (citation omitted); see also Aparicio, 893 So.2d at 631.
In sum, the district court opinions applying Peart reflect that in many cases, commencement of deportation proceedings or another event constituting a threatened deportation can lag far behind a guilty or no contest plea to a deportable offense. Because a claimed rule 3.172(c)(8) violation is not ripe under Peart until the defendant is threatened with deportation and has or should become aware of the threat, the delay in commencing deportation proceedings causes a corresponding delay in bringing these claims.
Delayed filing hampers adjudication because transcripts of plea colloquies that would demonstrate whether defendants were advised of immigration consequences often become unavailable over time. When a transcript was not previously prepared, court reporters are required to retain original notes or electronic records no longer than ten years in felony cases, five years in misdemeanor cases. Fla. R. Jud. Admin. 2.430(f). Accordingly, contrary to the Fourth District's opinion, there is no transcript of the plea colloquy in the record in this case, only a notation by the court reporter that in general transcripts are unavailable after ten years. Similarly, *216 plea hearing transcripts were unavailable in Gaston, 911 So.2d at 258 n. 1, and Kindelan, 786 So.2d at 599-600. The opinion in Kindelan also reflects an unsuccessful attempt to reconstruct the record. Id. at 600. Further, one court has held that inclusion of the immigration warning on a preprinted plea form signed by the defendant is an insufficient basis for denial of relief on this claim. Alexis v. State, 845 So.2d 262, 262 (Fla. 2d DCA 2003); Benelhocine v. State, 787 So.2d 38, 39-40 (Fla. 2d DCA 2001). Therefore, too often, the filing delay required by Peart deprives defendants of the means by which they could conclusively meet their burden of demonstrating that they were not given the immigration warning.
In addition, when a defendant's motion to withdraw a plea is granted for failure to give the rule 3.172(c)(8) warning, the passage of time between the guilty plea and the postconviction motion puts the State at a great disadvantage in seeking to try the case to conviction. Evidence may become unavailable and witnesses' memories may fade. Concern over the effect of delays in filing these motions was at the heart of Justice Wells' dissenting view in Peart that a defendant should establish a probability of acquittal, not merely threatened deportation, to obtain relief:
Requiring that the defendants establish that they most probably would have been acquitted is concordant with this court's conclusion that these motions must be brought within two years after judgment and sentence become final, as required by Rule 3.850. This two-year limitation assures some realistic probability that evidence will remain available and that the trial court can reliably determine whether defendant most likely would have prevailed at trial. If we adopt defendants' argument that the triggering event is the onset of deportation proceedings, in many cases the court files will be quite stale and evidence or witnesses may or may not be available. The two-year limit addresses this problem.
Peart, 705 So.2d at 1063-64 (footnote omitted). . . .
. . . .
As Justice Lewis stated in his concurring opinion in Provenzano v. State, 750 So.2d 597, 604 (Fla.1999), "[p]rocedures are not simply `technical' niceties." The procedure here is a two-year limitation which serves the purpose explained by Judge Shevin and should not be avoided by fixing the two years so that these otherwise stale claims are reviewed.
Peart, 756 So.2d at 52 (Wells, J., concurring in part and dissenting in part) (alteration in original).
The rejection by the Peart majority of a requirement that a defendant show probable acquittal in order to withdraw a plea is consistent with decisions by this Court and the United States Supreme Court in cases involving ineffective assistance claims. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Grosvenor v. State, 874 So.2d 1176, 1179-81 (Fla. 2004). Nonetheless, the district court decisions discussed above validate the concern that the requirements in Peart for stating a prima facie case for withdrawal of a plea based on a rule 3.172(c)(8) violation will render evidence and witnesses unavailable.

III. TIMELINESS OF RULE 3.172(C)(8) CLAIMS UNDER RULE 3.850
Rule 3.850(b) provides that a motion to vacate a sentence that exceeds the limits provided by law may be filed at any time, but all other motions filed under the rule in a noncapital case must be filed within two years after the judgment and sentence *217 become final. The rule contains three exceptions, but only the first is relevant here. It authorizes a motion filed beyond the two-year period if the motion alleges that the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained with the exercise of due diligence. Fla. R.Crim. P. 3.850(b)(1).
This Court first placed a time limit on postconviction claims in 1984. See Fla. Bar re Amendment to Rules of Criminal Procedure (Rule 3.850), 460 So.2d 907 (Fla.1984). As we noted in Baker v. State, 878 So.2d 1236, 1243 (Fla.2004), the two-year deadline and other limitations placed in the rule were prompted by Chief Justice Alderman's concurring-in-result-only opinion in McCrae v. State, 437 So.2d 1388 (Fla.1983). Chief Justice Alderman suggested a time limit on postconviction claims "to give due weight to the finality and the presumption of legality of a final judgment and to restore the public's confidence in our criminal system of justice. . . . There is no reason why a defendant, through the exercise of due diligence, cannot determine his basis for collateral attack during that period of time." Id. at 1391 (Alderman, C.J., concurring in result only).
Peart's holding that the limitations period for a motion claiming a rule 3.172(c)(8) violation begins when the defendant knew or should have known of the threat of deportation exempts these motions from the requirement in rule 3.850(b) that postconviction motions be filed within two years of the judgment and sentence becoming final. The district court precedent discussed above demonstrates that in many cases, the two-year clock does not start until long after the two-year period in the rule otherwise would have expired. Further, the actual or imputed knowledge of the threat of deportation that starts the two-year clock under Peart relieves defendants who could not meet the requirements of rule 3.850(b) from establishing that even with the exercise of due diligence, they could not have ascertained that they were subject to deportation within the two-year period in the rule. This result contravenes our caveat in Wood that "the discovery of facts giving rise to a coram nobis claim will continue to be governed by the due diligence standard and that coram nobis claims cannot breathe life into postconviction claims that have previously been held barred." 750 So.2d at 595 (citation omitted).

IV. RECEDING FROM PEART AND APPLYING RULE 3.850(B)
We decided Peart only six years ago, but its fruits have ripened to the point that we can confidently evaluate whether several of its holdings remain viable. Fidelity to precedent provides "stability to the law and to the society governed by that law." State v. Gray, 654 So.2d 552, 554 (Fla.1995). However, the doctrine "does not command blind allegiance to precedent." Id. Stare decisis yields "when an established rule of law has proven unacceptable or unworkable in practice." Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005). The district court precedent discussed above demonstrates that Peart's requirements for filing a timely claim and establishing a prima facie case for relief on a rule 3.172(c)(8) violation have delayed these claims to a point that has proven unacceptable.
Accordingly, we recede from Peart's holding as to the commencement of the two-year limitations period and its requirement that the defendant establish that he or she has been threatened with deportation. Instead, we apply the criteria of rule 3.850 to determine whether a postconviction motion claiming a rule *218 3.172(c)(8) violation is timely. A motion seeking to withdraw a plea on grounds that the trial court did not advise the defendant of the possibility of deportation will be held to the same time constraints as other postconviction motions raising other claims under rule 3.850. These claims must be brought within two years of the date that the judgment and sentence (or order withholding adjudication of guilt) become final. Henceforth, it is the fact that the plea subjects the defendant to deportation, rather than a specific threat of deportation, that establishes prejudice for the failure to inform the defendant in accord with rule 3.172(c)(8). Whether the plea subjects the defendant to deportation is an existent fact on the date of the plea which is either known or ascertainable by the defendant.
The requirement that a defendant allege and prove that he or she would not have entered the plea if informed of this possibility remains in force. See Peart, 756 So.2d at 47; cf. Grosvenor, 874 So.2d at 1181. Further, the defendant must state in the rule 3.850 motion how he or she will prove that the immigration warning was not given. In the normal case, this will require the defendant to allege that a hearing transcript will demonstrate a violation of rule 3.172(c)(8). Absent conclusive evidence of a violation, the trial court has discretion to deny relief.
Further, when a motion alleging a rule 3.172(c)(8) violation is untimely, the defendant must satisfy the requirement in rule 3.850(b)(1) by alleging and proving that the fact that the plea subjected the defendant to deportation could not have been ascertained during the two-year period with the exercise of due diligence. It will not be enough to allege that the defendant learned of the possibility of deportation only upon the commencement of deportation proceedings after the two-year limitations period has expired. The requirement of due diligence compels the defendant to allege and prove that affirmative steps were taken in an attempt to discover the effect of the plea on his or her residency status.

V. THIS CASE
Green's motion was legally deficient under Peart. He failed to allege that he had been threatened with deportation because of his plea. The Fourth District's reliance on Green's reply to the State's response to his motion was in error, because the reply was unsworn and was filed after the trial court denied his motion. A trial court is not required to consider facts raised in an unsworn supplemental pleading when ruling on a postconviction challenge to a plea. Melton v. State, 720 So.2d 577, 577 (Fla. 1st DCA 1998). Further, a trial court is obligated to consider an amended pleading only if it is filed before the court rules on the motion. See Gaskin v. State, 737 So.2d 509, 517-18 (Fla.1999) (holding that trial court erred in declining to consider amended motion filed before termination of two-year time limit for post-conviction motion and before trial court ruled), receded from on other grounds by Nelson v. State, 875 So.2d 579, 583 (Fla. 2004).
Accordingly, the trial court acted within its discretion in denying Green's motion to set aside its order and consider Green's reply. In taking into consideration Green's reply as if it were timely and under oath, the Fourth District failed to give proper deference to the trial court's authority to decline to consider the unsworn, untimely pleading. Although we have dispensed with the requirement that a defendant show that he or she is threatened with deportation because of the plea, Green's motion does not allege that he would not have entered the plea if advised *219 that it could result in his deportation. This remains essential to a claim for relief from a rule 3.172(c)(8) violation.
Therefore, the denial of Green's motion should be affirmed without prejudice to his filing a new motion within sixty days after jurisdiction returns to the trial court. If Green's new motion sufficiently alleges that the trial court did not advise him at the time of his plea that he could be deported, that he would not have entered the plea if properly advised, and that the plea in fact renders him subject to deportation, the trial court may summarily deny the claim only if it attaches record portions conclusively refuting one or more of these elements. Otherwise, Green must receive an evidentiary hearing. See Fla. R.Crim. P. 3.850(d).

CONCLUSION
To reiterate our holding in this case, a defendant seeking to withdraw a plea because the trial court did not advise the defendant of the possibility of deportation as part of the plea colloquy must file a rule 3.850 motion within two years after the judgment and sentence become final. The motion must allege, in addition to the lack of a deportation warning, that the defendant would not have entered the plea if properly advised and that under current law the plea does render the defendant subject to being removed from the country at some point in the future. A defendant filing outside the two-year limitation period must allege and prove that he or she could not have ascertained the immigration consequences of the plea with the exercise of due diligence within the two-year period.
Our holding in this case reduces the time in which a defendant must bring a claim based on an alleged violation of rule 3.172(c)(8). Therefore, in the interest of fairness, defendants whose cases are already final will have two years from the date of this opinion in which to file a motion comporting with the standards adopted today. In cases now pending in the trial and appellate courts on this issue, courts should apply the criteria set out herein. If relief is denied in a case now pending because the defendant has not alleged or established that he or she is subject to or threatened with deportation, the defendant should be allowed to refile in compliance with the standards set out in this case within sixty days of affirmance, denial, or dismissal. All other defendants have two years from the date their cases become final in which to seek relief under our holding today.
We quash the Fourth District decision in this case and remand for proceedings consistent with this opinion. We disapprove Curiel, Saldana, and Kindelan to the extent they rely on the requirement in Peart, from which we recede herein, that the defendant establish a specific threat of deportation.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Now, as at the time of Green's plea, rule 3.172(c)(8) provides that

the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
. . . .
(8) that if he or she pleads guilty or nolo contendere the trial judge must inform him or her that, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service.
The Court adopted this requirement in 1988. See In re Amendments to Fla. Rules of Criminal Procedure, 536 So.2d 992 (Fla.1988).
[2] Rule 3.172(i) provides that failure to follow procedures in the rule, which governs acceptance of a guilty or no contest plea, "shall not render a plea void absent a showing of prejudice."
[3] We have stayed the proceedings in Gaston pending disposition of this case.