WHATLEY, Judge.
 

 Edilberto Barrios-Cruz appeals the summary denial of two motions for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. The postconviction court denied Barrios-Cruz’s motions as untimely. For the reasons expressed below, we affirm.
 

 I. Background
 

 On January 27, 2004, Barrios-Cruz pleaded guilty to discharging a firearm in public, an offense for which he received one year of probation. On May 2, 2006, Barrios-Cruz pleaded guilty to possession of drug paraphernalia and to maintaining a structure for using, keeping, or selling drugs, offenses for which he again received one year of probation. On August 9, 2010, Barrios-Cruz, through counsel, filed his two motions for postconviction relief — one for each case — in which he alleged that his counsel was ineffective for failing to advise him of the deportation consequences of his pleas. In addition, he claimed that in his 2006 case, the trial court failed to advise him of the possibility of deportation during the plea colloquy. He asserts that his motions are timely under rule 3.850(b)(2) based on the retroactive application of the Supreme Court’s decision in
 
 Padilla v. Kentucky,
 
 — U.S. —, —, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010), which creates a duty on behalf of counsel to advise their noncitizen clients that their criminal charges may subject them to adverse immigration consequences.
 

 While some jurisdictions have begun to address the issue, this court has yet to resolve the question of whether
 
 Padilla
 
 applies retroactively. We now hold that Padilla should not be applied retroactively in postconviction proceedings and agree with the Third District’s opinion in
 
 Hernandez v. State,
 
 61 So.3d 1144 (Fla. 3d DCA 2011). However, we recognize that courts are split on this issue,
 
 [1]
 
 and our decision carries with it significant implications for the treatment of pleas entered prior to
 
 Padilla.
 
 Therefore, we certify to the Florida Supreme Court the following question of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
 

 SHOULD THE RULING IN
 
 PADILLA
 
 7.
 
 KENTUCKY,
 
 — U.S.—, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), BE APPLIED RETROACTIVELY IN POSTCONVICTION PROCEEDINGS?
 

 
 *871
 
 II. Retroactivity Analysis
 

 We conclude that
 
 Padilla
 
 should not be applied retroactively based on the following analysis. First, it is important to consider the content of
 
 Padilla
 
 itself. The Supreme Court observes that “[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains” and rejects the notion that its decision would open the “floodgates,” possibly referring to the retroactive effect of its decision. 130 S.Ct. at 1484-85. However, at no point does the Court explicitly state a holding one way or the other.
 
 Id.
 
 Therefore, it is necessary to turn to a separate retroactivity analysis.
 

 According to
 
 State v. Fleming,
 
 61 So.3d 399, 403 (Fla.2011), “[t]o determine whether a new rule applies retroactively to final cases in postconviction proceedings, ... courts in Florida conduct a retroactivity analysis under
 
 Witt v. State,
 
 387 So.2d 922 (Fla.1980).” While federal courts and many state courts prefer to use the newer retroactivity standard articulated in
 
 Teague v. Lane,
 
 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Florida Supreme Court continues to stand by
 
 Witt
 
 because it “provides more expansive retro-activity standards than those adopted in
 
 Teague.” Johnson v. State,
 
 904 So.2d 400, 409 (Fla.2005).
 

 Under
 
 Witt,
 
 a change of law will not be applied retroactively “unless the change: (a) emanates from [the Supreme Court of Florida] or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.” 387 So.2d at 931. Because
 
 Padilla
 
 is a United States Supreme Court decision that is constitutional in nature, the first two elements of this analysis have been satisfied. Accordingly, the question becomes whether
 
 Padilla
 
 represents a development of fundamental significance.
 
 Witt
 
 divides such developments into two categories: “those changes of law which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties,” and “those changes of law which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of
 
 Stovall [v. Denno,
 
 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) ] and
 
 Linkletter [v. Walker,
 
 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)].”
 
 Id.
 
 at 929, 85 S.Ct. 1731. Because the holding in
 
 Padilla
 
 does not fall within the first category, the analysis turns upon the three factors presented in
 
 Stovall
 
 and
 
 Linkletter.
 
 These factors include: “(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of the retroactive application of the new rule.”
 
 Id.
 
 at 926, 85 S.Ct. 1731.
 

 A. The Purpose to be Served by the New Rule
 

 The purpose of the
 
 Padilla
 
 decision is to extend the Strickland
 
 [2]
 
 ineffective assistance of counsel standard to ensure that noncitizen defendants receive an appropriate warning from counsel when their pleas are likely to result in deportation. In
 
 Hughes v. State,
 
 901 So.2d 837 (Fla.2005), the Supreme Court of Florida used the
 
 Witt
 
 standard to assess whether
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), should be applied retroactively. The purpose of
 
 Ap-prendi
 
 was to determine whether, “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved
 
 *872
 
 beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. 2348. In holding that
 
 Ap-prendi
 
 should not be applied retroactively, the Florida Supreme Court noted that the purpose of
 
 Apprendi
 
 “does not affect the determination of guilt or innocence.”
 
 Hughes,
 
 901 So.2d at 841. The court went on to state that
 
 “[Apprendi
 
 ] does not address a miscarriage of justice or effect a judicial upheaval to the degree necessary to require its retroactive application.”
 
 Id.
 
 at 842.
 

 Because the
 
 Padilla
 
 decision concerns only a specific set of plea agreements, it represents a more minor change than that of
 
 Apprendi,
 
 one with implications that are significantly more unique and narrow. As such, it is less suited for retroactive application. What it does share in common with
 
 Apprendi
 
 — that it is a change that does not affect guilt or innocence or represent a judicial upheaval — only bolsters this assertion. To illustrate,
 
 Witt
 
 holds that new rules generally should not be applied retroactively unless they involve “fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.” 387 So.2d at 929. In so holding,
 
 Witt
 
 examines the opposite end of the spectrum: “In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards ... for procedural fairness ... and for other like matters. Emergent rights in these categories ... do not compel an abridgement of the finality of judgments.”
 
 Id.
 
 The intent of
 
 Padilla
 
 — to extend the scope of
 
 Strickland
 
 in the interest of procedural fairness-falls under the latter category rather than the former.
 

 Finally, we note that
 
 Padilla
 
 was decided in the evolving landscape of “changes to our immigration law [that] have dramatically raised the stakes of a noncitizen’s criminal conviction.” 130 S.Ct. at 1480. Thus, the
 
 Padilla
 
 decision constitutes an evolutionary refinement designed to correspond to new developments in an ever-changing area of law. As such, the purpose of the
 
 Padilla
 
 decision does not compel retroactive application.
 

 B. The Extent of Reliance on the Old Rule
 

 Strickland,
 
 decided in 1984, provided the well-established standard for ineffective assistance of counsel, and it did not include any discussion of a defendant’s residency status. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, prior to the decision in
 
 Padilla,
 
 no formal duty existed for counsel to advise clients of the immigration consequences of a plea. However, pursuant to Florida Rule of Criminal Procedure 3.172(c)(8), Florida courts are required to notify defendants during the plea colloquy that their pleas may subject them to deportation.
 
 See In re Amendments to Florida Rules of Criminal Procedure,
 
 536 So.2d 992, 992 (Fla.1988). This rule has been in effect since 1989, and it will continue to have significance, even in light of the
 
 Padilla
 
 decision.
 
 See, e.g., Flores v. State,
 
 57 So.3d 218 (Fla. 4th DCA 2010) (noting that even if counsel performed deficiently under
 
 Padilla,
 
 the defendant was unable to establish prejudice because during the plea colloquy, the trial court advised the defendant that his plea might result in his deportation and the defendant admitted that he understood). The longstanding, reasonable reliance upon this rule weighs heavily against the retroactive application of
 
 Padilla. See Williams v. State,
 
 421 So.2d 512, 515 (Fla.1982) (holding that reasonable reliance upon the old rule “is an important factor supporting prospective application of the new rule”). Finally, as noted above, the
 
 Padilla
 
 decision represents a response to recent changes in immigration law,
 
 *873
 
 changes which have implications that could not have been accounted for in the past.
 

 C. Effect of Retroactive Application on the Administration of Justice
 

 In discussing
 
 Apprendi,
 
 the First District theorized that the impact of retroactive application on the administration of justice “would be monumental.”
 
 Hughes v. State,
 
 826 So.2d 1070, 1074 (Fla. 1st DCA 2002). As stated above,
 
 Padilla
 
 likely has fewer far-reaching implications than
 
 Apprendi.
 
 However,
 
 Padilla
 
 does carry with it the potential for the same sort of complications. Of paramount concern is the likelihood that courts would be faced with a great number of postconviction motions stemming from past convictions, some of which would be decades old. Addressing motions challenging convictions that have long since been final would present a logistical nightmare for the courts, with the proceedings themselves potentially raising more questions than they would be able to answer. Furthermore, “the passage of time between the guilty plea and the postconviction motion puts the State at a great disadvantage in seeking to try the case to conviction.”
 
 State v. Green,
 
 944 So.2d 208, 216 (Fla.2006). As such, it appears evident that applying
 
 Padilla
 
 retroactively to expand the two-year time-frame for filing a rule 8.850 motion “would undermine the perceived and actual finality of criminal judgments and would consume immense judicial resources without any corresponding benefit to the accuracy or reliability of [the plea] proceedings.”
 
 Johnson,
 
 904 So.2d at 412.
 

 III. Conclusion
 

 We conclude that the three
 
 Witt
 
 factors weigh against the retroactive application of
 
 Padilla.
 
 While we recognize that
 
 Padilla
 
 represents an important development enumerating both a new right for defendants and a new duty for counsel, we do not find that it rises to the level of those rare “fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.”
 
 Witt,
 
 387 So.2d at 929. We therefore hold that
 
 Padilla
 
 does not apply retroactively. Because Barrios-Cruz’s most recent conviction was final almost four years prior to the
 
 Padilla
 
 decision, the postconviction court correctly denied his motions as untimely. Furthermore, even when considered under the timeframe announced in
 
 State v. Green,
 
 944 So.2d 208 (Fla.2006),
 
 [3]
 
 Barrios-Cruz’s motions are still untimely.
 
 [4]
 

 Affirmed.
 

 KHOUZAM and MORRIS, JJ., Concur.
 

 [1]
 

 . Courts that have concluded that
 
 Padilla
 
 should be applied retroactively include:
 
 People v. Bennett,
 
 28 Misc.3d 575, 903 N.Y.S.2d 696 (N.Y.Crim.Ct.2010);
 
 Marroquin v. United States,
 
 2011 WL 488985 (S.D.Tex. Feb.4, 2011);
 
 United States v. Hubenig,
 
 2010 WL 2650625 (E.D.Cal. Jul.l, 2010);
 
 United States v. Chaidez,
 
 730 F.Supp.2d 896 (N.D.Ill.2010);
 
 Martin v. U.S.,
 
 2010 WL 3463949 (C.D.Ill. Aug.25, 2010); and
 
 Al Kokabani v. United States,
 
 2010 WL 3941836 (E.D.N.C. Jul.30, 2010). Courts that have reached the opposite conclusion include:
 
 People v. Kabre,
 
 29 Misc.3d 307, 905 N.Y.S.2d 887 (N.Y.Crim.Ct.2010);
 
 United States v. Macedo,
 
 2010 WL 5174342 (N.D.Fla. Dec.15, 2010) (holding simply that
 
 Padilla
 
 "was not made retroactive to cases on collateral review” without further analysis);
 
 United States v. Hough,
 
 2010 WL 5250996 (D.N.J. Dec.17, 2010);
 
 Miller v. State,
 
 196 Md.App. 658, 11 A.3d 340 (2010);
 
 United States v. Perez,
 
 2010 WL 4643033 (D.Neb. Nov.9, 2010);
 
 United States v. Gilbert,
 
 2010 WL 4134286 (D.N.J. Oct.19, 2010);
 
 Haddad v. United States,
 
 2010 WL 2884645 (E.D.Mich. Jul.20, 2010); and
 
 Gacko v. United States,
 
 2010 WL 2076020 (E.D.N.Y. May 20, 2010).
 

 [2]
 

 .
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 [3]
 

 . In
 
 Green,
 
 944 So.2d at 219, the Florida Supreme Court provided a defendant whose case was already final at the time of the opinion with two years from the date of
 
 Green
 
 to bring a claim that the trial court failed to advise him of the possible immigration consequences of his plea. Because Barrios-Cruz’s case was final at the time of the
 
 Green
 
 decision, he had until October 26, 2008, to file a timely postconviction motion raising such a claim.
 
 Id.; Ventura v. State,
 
 977 So.2d 794, 796 (Fla. 2d DCA 2008). Any motions filed beyond this date would need to fall under one of the exceptions in rule 3.850(b) to be considered timely.
 
 Green,
 
 944 So.2d at 218. A defendant cannot satisfy this requirement by simply claiming that he learned of the possibility of deportation only upon the commencement of deportation proceedings; he must allege and prove that affirmative steps were taken in an attempt to discover the effect of the plea on his residency status.
 
 Id.
 

 [4]
 

 . Barrios-Cruz’s motions, both filed in 2010, are beyond the October 26, 2008, extension
 
 *874
 
 offered by
 
 Green.
 
 In addition, they do not allege any affirmative steps to discover the effect of the plea on his residency status. As such, they are barred as untimely under
 
 Green.