CORTINAS, J.
Drewery Geter appeals a circuit court order denying his motion for postconvic *376 tion relief filed pursuant to Florida Rule of Criminal Procedure 8.800.
Geter was arrested for first-degree murder in December 2000, on the eve of his seventeenth birthday. Earlier that same day, a rock or stone was thrown through the front window of the victim’s home, breaking the window, and allowing Geter to gain entry into the home. The victim, in an attempt to defend her home, her child, and herself, struggled with Geter and struck him in the head with a crowbar. However, Geter was able to overpower the victim. He ripped the victim’s panties from her body, raped her, and ejaculated inside her vagina.[1] During the violent struggle between the victim and Geter, the victim’s three-year-old son was awoken by his mother’s screams.
After the rape, Geter got a butcher knife. He stabbed the victim in the neck eight to twelve times. Geter then cut the victim from her elbow to her wrist so that she would bleed faster and die. When the victim still had not died, Geter finally choked her to death. The victim’s three-year old son witnessed the brutal murder of his mother. Before leaving the victim’s home, Geter passed by the victim’s son and told him to be a good boy.
On April 30, 2003, Geter was convicted of first-degree murder and sentenced to life imprisonment as a juvenile offender on June 23, 2003. On direct appeal, this Court affirmed Geter’s conviction and sentence on October 13, 2004. Geter’s three subsequent postconviction motions were denied by this Court without discussion, on October 28, 2005, September 2, 2009, and May 12, 2010, respectively. Geter now files this 3.800 motion seeking postconviction relief on the basis of the recent United States Supreme Court decision in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). The issue before this Court is whether Miller applies retroactively to postconviction proceedings involving a juvenile homicide offender whose conviction of first-degree murder and sentence to life imprisonment was final prior to the Miller decision. We conclude that under Florida law, Miller cannot be applied retroactively to Florida postconviction proceedings where the life sentence was already final when Miller was rendered. Accordingly, we affirm the circuit court’s order that denied Geter’s motion for postconviction relief.
Recently, the Supreme Court in Miller, 132 S.Ct. at 2461, held that the Eighth Amendment’s prohibition of cruel and unusual punishment precludes juvenile homicide convictions that mandate a life sentence without first considering “mitigating factors of youth.” The Supreme Court explained that under Eighth Amendment guarantees, “a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.” Id. at 2475 (emphasis added). Thus, the determination in Miller focuses on a new procedure for criminal sentencing. Id. As the Supreme Court clarified, “[o]ur decision does not categorically bar a penalty for a class of offenders or type of crime, as for example, in [Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) ] or [Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)].[2] Instead *377 [Miller] mandates only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” Miller, 132 S.Ct. at 2471. Clearly and unequivocally, the Supreme Court distinguished between the substantive determinations of a categorical bar prohibiting a “penalty for a class of offenders or type of crime,” as in Roper and Graham, and the procedural determination in Miller that merely requires consideration of mitigating factors of youth in the sentencing process. Id.
In determining whether Florida law allows retroactive application, we must first consider the content of Miller itself. See Hernandez v. State, 61 So.3d 1144, 1149 (Fla. 3d DCA 2011); Barrios-Cruz v. State, 63 So.3d 868, 871 (Fla. 2d DCA 2011). The Supreme Court’s language in Miller did not explicitly state whether or not Miller should be applied retroactively. Accordingly, “[t]o determine whether a new rule applies retroactively to final cases in postconviction proceedings, ... courts in Florida conduct a retroactivity analysis under Witt v. State, 387 So.2d 922 (Fla.1980).” Hernandez, 61 So.3d at 1150 (citation omitted); see also State v. Fleming, 61 So.3d 399, 403 (Fla.2011). Long ago, the Witt Court rejected “in the context of an alleged change of law, the use of post-conviction relief proceedings to correct individual miscarriages of justice or to permit roving judicial error corrections, in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.” Witt, 387 So.2d at 929 (footnote omitted). In limiting the scope of postconviction relief, the Florida Supreme Court reasoned that “[t]o allow non-constitutional claims as bases for post-conviction relief is to permit a dual system of trial and appeal, the first being tentative and nonconclusive. Id. at 929-30. Our justice system could not accommodate such an expansion; our citizens would never tolerate the deleterious consequences for criminal punishment, deterrence and rehabilitation.” Id. at 928-29.
As Witt explains,
[Hjistory shows that most major constitutional changes are likely to fall within two broad categories. The first are those changes of law which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties. This category is exemplified by Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), which held that the imposition of the death penalty for the crime of rape of an adult woman is forbidden by the eighth amendment as cruel and unusual punishment. The second are those changes of law which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] and [Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)]. Gideon v. Wainwright, [372 U.S. 335[, 83 S.Ct. 792, 9 L.Ed.2d 799] (1963)], of course, is the prime example of a law change included within this category.[3]
*378 Id. at 929 (footnotes omitted); see also Barrios-Cruz, 63 So.3d at 871; State v. Barnum, 921 So.2d 513, 519 (Fla.2005).
In contrast, “[o]n the opposite end of the spectrum are ‘evolutionary refinements in the criminal law5 which, according to Witt, are not applied retroactively.” Barnum, 921 So.2d at 519 (quoting Witt, 387 So.2d at 929). Such refinements “include those ‘affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters.’ ” Id. (quoting Witt, 387 So.2d at 929). Notably, “[ejmergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments.” Witt, 387 So.2d at 929; see also Barnum, 921 So.2d at 519. The Florida Supreme Court warned that if these refinements were applied retroactively, such an impact would “destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.” Witt, 387 So.2d at 929-30 (footnote omitted).
In applying Witt to the present case, Miller is evaluated to determine whether it “(a) emanates from [the Supreme Court of Florida] or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.” Hernandez, 61 So.3d at 1150 (quoting Witt, 387 So.2d at 931); see also Barnum, 921 So.2d at 524; Chandler v. Crosby, 916 So.2d 728, 730 (Fla.2005). The first two of the three elements are clearly met because Miller is a United States Supreme Court decision that is constitutional in nature. Accordingly, the question becomes whether Miller is a development of fundamental significance.
The Florida Supreme Court has proscribed three factors in assessing whether a constitutional determination is a development of fundamental significance. See Witt, 387 So.2d at 926; Barrios-Cruz, 63 So.3d at 871; see also Chandler, 916 So.2d at 730 (noting that these factors should be used to evaluate whether the constitutional determination is procedural rather than substantive in nature). This assessment includes analysis of: “(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of a retroactive application of the new rule.” Witt, 387 So.2d at 926 (citations omitted); see also Barrios-Cruz, 63 So.3d at 871; Chandler, 916 So.2d 728. Ensuring that the legal development is a constitutional determination of fundamental significance prevents mere “evolutionary refinements” from being applied retroactively. See Witt, 387 So.2d at 929; Barnum, 921 So.2d at 526. As addressed below, a review of the three factors reveals that Miller is not a development of fundamental significance.
A. Purpose to be Served
First, the purpose to be served by Miller is a procedural change in law that provides for a new process in juvenile homicide sentencing. Miller, 132 S.Ct. at 2471 (noting that Miller mandates only that a sentencer follow a certain process before imposing life sentence). Like other decisions that have declined to retroactively apply constitutional determinations, Miller does not affect the “ ‘determination of guilt or innocence [of a juvenile defendant]’ and ‘does not address a miscarriage *379 of justice or effect a judicial upheaval’ regarding substantive criminal law.” Hernandez, 61 So.3d at 1150 (quoting Hughes v. State, 901 So.2d 837, 841-42 (Fla.2005)). Also, the procedural determination in Miller fails to “cast serious doubt on the veracity or integrity of the original trial proceeding.” Witt, 387 So.2d at 922. Because the Miller determination is a procedural change in juvenile homicide sentencing, it is merely an “evolutionary refinement ] in criminal law” that does “not compel an abridgement of the finality of judgments.” Id. at 929.
In Hughes, 901 So.2d 837, the Florida Supreme Court addressed whether Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), should be applied retroactively under Witt. In Apprendi, 530 U.S. at 490, 120 S.Ct. 2348, the United States Supreme Court held that, other than a prior conviction, any fact that increases the penalty for a crime beyond the proscribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. In Apprendi, the limited question before the Supreme Court was whether the state’s procedure under the sentencing enhancement statute conformed to due process guarantees. Id. at 474, 120 S.Ct. 2348 (“The substantive basis for New Jersey’s enhancement is thus not at issue; the adequacy of New Jersey’s procedure is.”). The Supreme Court determined the sentencing enhancement procedure did not provide adequate due process because it required the trial judge to conduct an inquiry into an element of the offense for which the defendant was convicted under a lesser burden of proof. Id. at 492, 120 S.Ct. 2348.
The Supreme Court noted that because “[t]he defendant’s intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense ‘element[,]’ ” id. at 493, 120 S.Ct. 2348, the enhancement’s effect “is unquestionably to turn a second-degree offense into a first degree offense, under the State’s own criminal code.” Id. at 494, 120 S.Ct. 2348. Because the statute’s effect required the finding of an element of a crime, the procedure did not provide criminal due process rights, which included “trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt.” Id. Thus, the Supreme Court reasoned that “[i]f a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, ... it necessarily follows that the defendant should not — at the moment the State is put to proof of those circumstances — be deprived of protections that have, until that point, unquestionably attached.” Id. Accordingly, the Supreme Court determined that, as structured, the sentencing enhancement procedure circumvented due process guarantees because it “removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.” Id.
Nevertheless, in applying Witt, the Florida Supreme Court held that Apprendi did not rise to the level requiring retroactive application. Hughes, 901 So.2d 837. In Hughes, the Florida Supreme Court held that as a procedural rule, “Apprendi does not implicate core values to the degree necessary to its retroactive application.” Id. at 843. In declining to retroactively apply Apprendi, the Florida Supreme Court stressed the importance of the State’s interest in the finality of a conviction:
The importance of finality in any justice system, including the criminal justice *380 system, cannot be understated. It has long been recognized that, for several reasons, litigation must, at some point, come to an end. In terms of the availability of judicial resources, cases must eventually become final simply to allow effective appellate review of other cases.
Id. (quoting Witt, 387 So.2d 922 at 925). Thus, the Florida Supreme Court made clear that retroactive application should not be applied in postconviction proceedings when the constitutional decision renders a procedural determination that does not affect the finality of the criminal conviction. Id. at 846 (holding that Apprendi “announced an emerging right of procedural fairness that does not compel the disruption of final judgments.”); see also Witt, 387 So.2d at 929 (“Emergent rights in these categories [e.g., procedural fairness] ... do not compel an abridgement of the finality of judgments.”). Accordingly, like Apprendi, retroactive application of the procedural determination in Miller would thwart the State’s interest in the finality of convictions.
Consistent with this principle of finality, the Florida Supreme Court held the determination in Apprendi is a new procedure for criminal sentencing, which “does not affect the determination of guilt or innocence; it only requires that sometimes the jury, not the judge, must decide factual aspects of the sentencing decision.” Id. at 841; see also Fleming, 61 So.3d at 408 (holding that retroactive application was not required in postconviction proceedings under Apprendi because the determination affected only the procedure for enhancing sentences, and did not affect the finality of convictions). In fact, “Apprendi permits a judge to continue to make these same factual determinations as long as the resulting sentence does not exceed the statutory maximum.” Id. at 841. The Supreme Court declined to retroactively apply Ap-prendi because it was not a decision that concerned a lack of constitutional due process in criminal convictions or sentences imposed within 'the statutory maximum. Hughes, 901 So.2d at 842; see also Coleman v. United States, 329 F.3d 77, 89 (2d Cir.2003) (stating that Apprendi “merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant’s right to a jury trial and the government’s burden of proof beyond a reasonable doubt.”) (internal quotation marks omitted); Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (“[R]ules that regulate only the manner of determining the defendant’s culpability are procedural.”). Rather, like Miller, the Florida Supreme Court found that the determination in Apprendi is a procedural change in law regarding criminal sentencing. See Hughes, 901 So.2d at 842 (“In the numerous cases under Witt, we have rarely found a change in decisional law to require retroactive application.”) (quoting Mitchell v. Moore, 786 So.2d 521, 529 (Fla.2001)) (internal quotation marks omitted).
Miller’s purpose was to provide a procedure for considering mitigating factors of youth before the possibility of imposing a decreased sentence under the statutory maximum. On the other hand, Apprendi’s purpose was a decisional change in procedure for imposing sentences that exceeded the statutory maximum after finding an element of the offense for which the defendant was already convicted. Hughes, 901 So.2d at 845 (“Apprendi shifted certain fact-finding from judge to jury and ‘clarified and extended’ the right to a jury trial to require the State to prove convictions beyond a reasonable doubt by applying the standard to certain factors affecting sentencing under certain conditions.”) (quoting United States v. Mora, 293 F.3d 1213, 1219 (10th Cir.2002)). Miller is distinguishable from Apprendi insofar as the *381 determination was meant to protect due process in the criminal context where a determination of an element of a crime increases the convicted offender’s sentence beyond the statutory maximum. See Hughes, 901 So.2d at 841; see also Apprendi, 530 U.S. at 484, 120 S.Ct. 2348 (noting the reasonable doubt standard as a type of criminal procedure protection). However, the Florida Supreme Court noted that “[although Apprendi reflects due process concerns, it does not address a miscarriage of justice or effect a judicial upheaval to the degree necessary to require its retroactive application.” Hughes, 901 So.2d at 842. Thus, in weighing the State’s interest in the finality of convictions, the Florida Supreme Court determined that the procedural rule in Appren-di did not require retroactive application. See Hughes, 901 So.2d at 844 (holding that “Apprendi does not impugn the ‘very integrity of the fact-finding process’ or present ‘the clear danger of convicting the innocent.’ ”) (citation omitted); see also Sepulveda v. United States, 330 F.3d 55, 60 (1st Cir.2003) (noting that the sentence was not “plucked out of thin air”; the judge determined it “based upon discrete findings of fact established by a fair preponderance of the evidence.”). Accordingly, in Hughes, the Florida Supreme Court followed the well established principle that retroactive application is not required where constitutional decisions declare new procedural rules of law that do not affect the finality of convictions. See Sepulveda, 330 F.3d at 60 (“Apprendi’s new rule not only fails to impugn the accuracy of convictions that became final beforehand but also falls short of rendering sentences imposed under the pre-Apprendi regime seriously inaccurate.”); see also Schriro, 542 U.S. at 353, 124 S.Ct. 2519 (“New rules of procedure, on the other hand, generally do not apply retroactively.”).
What Miller and Apprendi do share is that they both concern constitutional determinations implicating procedural changes with unique and narrow applications. Both constitutional determinations are new procedural rules in criminal law that do not affect the finality of the criminal conviction. See Hughes, 901 So.2d at 841-42; see also Witt, 387 So.2d at 929. Likewise, Miller and Apprendi do not preclude the sentencer from imposing the statutory maximum, but rather require the sentencer to follow certain procedures before doing so. See Hughes, 901 So.2d at 844 (noting that the determination in Ap-prendi was an emerging right of procedural fairness because it shifted certain fact-finding from judge to jury); see also Fleming, 61 So.3d at 408 (“Apprendi affects only the procedure for enhancing the sentence.”); Miller, 132 S.Ct. at 2471 (“Instead [Miller ] mandates only that a sen-tencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.”). Accordingly, the new procedural determination in Miller does not warrant retroactive application in postcon-viction proceedings. See Hughes, 901 So.2d at 844 (“[T]he new criminal procedural rule announced in Apprendi does not warrant retroactive application.”).
Compared to Apprendi, retroactive application is even less warranted with respect to Miller. For example, unlike Apprendi, Miller does not require the sentencer to conduct an inquiry into an element of the offense already determined by a jury beyond a reasonable doubt for which the offender was convicted. Likewise, Miller does not require jury submission of factors to be found beyond a reasonable doubt. Also, contrary to Apprendi, Miller’s procedural rule does not require the sentencer to consider any factor other than what was submitted to the jury and proved by a *382 reasonable doubt for the conviction. As such, the procedural determination in Miller is even less intrusive on the judicial system than the determination in Apprendi. See Hughes, 901 So.2d at 842 (noting that due process sentencing concerns do not rise to the level of a judicial upheaval necessary to invoke retroactive application because Apprendi was a procedural determination). Moreover, the Florida Supreme Court has already rejected the retroactive application of procedural rules that implicate constitutional rights in the criminal context.[4] See Hughes, 901 So.2d at 842 (noting that the United States Supreme Court declined retroactive application of its decision in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), because even though the right to a jury trial in criminal cases is “fundamental to the American scheme of justice, the Court stated that this conclusion in no way impugned the integrity of bench trials.”) (internal quotation marks omitted). Thus, following the line of cases rendered by the Florida Supreme Court, the procedural determination in Miller cannot be said to require retroactive application in postconviction proceedings.
Likewise, in Hernandez, 61 So.3d 1144, this Court addressed whether the determination in Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), should be applied retroactively under Witt. This Court held that the determination in Padilla, which affected pleas and standards of competence for counsel, was procedural in nature rather than a substantive change. Hernandez, 61 So.3d at 1150 n. 1. In declining to retroactively apply Padilla, this Court noted that the third factor in the Witt test was not satisfied because the Supreme Court’s constitutional determination was not of fundamental significance. Id. at 1151. Rather, this Court determined that like Miller, Padilla “announced an emerging right of procedural fairness that does not compel the disruption of final judgments.” Id. at 1150 (quoting Hughes, 901 So.2d at 844). Also comparable to the determination in Miller, this Court noted that “retroactive application of Padilla does not further the critical purposes of protecting ‘the veracity or integrity’ of the underlying criminal case and preventing the conviction of the innocent.” Id. (citations omitted). Similarly, to date, every other Florida District Court of Appeal has held that Padilla does not have retroactive application. See Zamora v. State, 112 So.3d 112, (Fla. 1st DCA 2012); Smith v. State, 85 So.3d 551 (Fla. 4th DCA 2012); Barrios-Cruz, 63 So.3d 868; State v. Shaikh, 65 So.3d 539 (Fla. 5th DCA 2011). Thus, similarly to Apprendi and Padilla, the Miller “decision constitutes an evolutionary refinement designed to correspond to new developments in an ever-changing area of law.” Barrios-Cruz, 63 So.3d at 872; Hughes, 901 So.2d at 844; see also Apprendi, 530 U.S. at 476, 120 S.Ct. 2348.
B. Extent of Reliance on the Old Rule
Second, the old rule has been longstanding and strongly relied upon by Florida trial and appellate courts. Florida law has *383 long permitted courts to impose life sentences on juveniles tried as adults after conviction of first-degree murder. Indeed, Miller does not foreclose such a sentence, but only requires consideration of mitigating factors of youth. Florida courts’ “longstanding, reasonable reliance upon this rule weighs heavily against the retroactive application” of the determination in Miller. Barrios-Cruz, 63 So.3d at 872; see also Williams v. State, 421 So.2d 512, 515 (Fla.1982) (holding that reasonable re-banee upon the old rule “is an important factor supporting prospective application of the new rule.”). As this Court has stated, “[sjuch a ‘considerable period of reliance’ militates against retroactive application” of the new procedural determination in Miller. Hernandez, 61 So.3d at 1151 (quoting Hughes, 901 So.2d at 845). Because the Miller determination is a procedural change in criminal law and has implications that could not have been accounted for in the past, reliance on the old rule weighs against retroactive application. See Hughes, 901 So.2d at 845 (“Therefore, when Apprendi was decided there had been a considerable period of reliance on this principle in sentencing under both the guidelines and the Code.”).
C. Effect of Retroactive Application
Third, retroactive application of Miller would be far-reaching and adverse to the administration of justice. Because Miller is an “evolutionary refinement ] in criminal law,” retroactive application would “destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.” Witt, 387 So.2d at 929; see also Chandler, 916 So.2d at 730. Further, “absence of finality casts a cloud of tentativeness over the criminal justice system, benefiting neither the person convicted nor society as a whole[,]” cutting against retroactive application of the determination in Miller. Witt, 387 So.2d at 925; see also Chandler, 916 So.2d at 730 (“[I]f Crawford was applied retroactively, the administration of justice would be greatly affected.”). “Of paramount concern is the likelihood that courts would be faced with a great number of postcon-viction motions stemming from past convictions, some of which would be decades old.” Barrios-Cruz, 63 So.3d at 873; see also Witt, 387 So.2d at 925 (noting that the “increased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the administration of justice.”).
Applying Miller retroactively would undoubtedly open the floodgates for postcon-viction motions where at the time of conviction and sentencing, the judge did not have an affirmative duty to consider mitigating factors of youth. Evidentiary hearings “[ajddressing motions challenging convictions that have long since been final would present a logistical nightmare for the courts, with the proceedings themselves potentially raising more questions than they would be able to answer.” Barrios-Cruz, 63 So.3d at 873. Among the clear and obvious difficulties in holding new sentencing hearings in cases that were final years ago are (1) the judge who tried the case and physically saw and heard the evidence may not be available, (2) trial transcripts may no longer be available, (3) prosecutors familiar with the case may no longer be employed with their respective office, and (4) family members who are still alive and who had to live through the trial, appeals, and postconviction motions, will be subjected to a new proceeding involving new lawyers, a new judge, stale memories, and additional appellate proceedings.
As such, it is evident that applying Miller retroactively “would undermine the *384 perceived and actual finality of criminal judgments and would consume immense judicial resources without any corresponding benefit to the accuracy or reliability of the [underlying criminal case].” Id. (quoting Johnson, 904 So.2d at 412). Because “[e]ach of the three Witt factors cuts against retroactive application[,]” Miller is not a development of fundamental significance. Hernandez, 61 So.3d at 1151. Accordingly, Miller, “although an important development in criminal procedure, is not a ‘jurisprudential upheaval’ of ‘sufficient magnitude to necessitate retroactive application.’ ” Johnson, 904 So.2d at 412 (quoting Witt, 387 So.2d at 929); see also Chandler, 916 So.2d at 731 (declining to retroactively apply determination when the new rule “does not present a more compelling objective that outweighs the importance of finality.”).
Miller is entirely distinguishable from Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825. Graham categorically barred a life sentence for juveniles which clearly Miller did not. Miller, 132 S.Ct. at 2471. In Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, the Supreme Court held that sentencing juvenile nonhomicide offenders to life without any meaningful opportunity to obtain release violates the Eighth Amendment’s prohibition on cruel and unusual punishment. However, the Supreme Court noted that “[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomi-cide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Id. at 2030. Further, “it is for the State, in the first instance, to explore the means and mechanisms for compliance.” Id. In Kleppinger v. State, 81 So.3d 547 (Fla. 2d DCA 2012), the Second District addressed whether the determination in Graham should be applied retroactively. Without reference to the Witt test, the Second District held that Graham’s categorical bar for nonhomicide offenders should be applied retroactively. Kleppinger, 81 So.3d at 550. There, the Second District remanded for resentencing, reasoning that, at the time the crime was committed, Kleppinger was a juvenile, the kidnapping crime was not a homicide, and the sentence imposed was life without parole. Id.
The retroactive application of Graham in no way contradicts the conclusion that under Witt, Miller cannot be applied retroactively. Unlike Miller, Graham was a substantive change in law that “place[d] beyond the authority of the state the power to regulate certain conduct or impose certain penalties.” Witt, 387 So.2d at 929. In applying Florida’s retroactivity analysis, Graham was analogous to Coker, insofar as it was a substantive change in criminal law that categorically barred a type of sentencing after conviction for a particular type of crime. Witt, 387 So.2d at 929. Graham prohibits a life sentence without meaningful opportunity for release for juveniles convicted of a nonhomicidal offense. Miller allows a life sentence for a juvenile convicted of a homicidal offense after consideration of mitigating factors of youth. As noted earlier, the Supreme Court explicitly distinguished Miller from Graham, which it referred to as a “categorically bar” against a penalty for a class of offenders or type of crime. Miller, 132 S.Ct. at 2471. Instead, Miller “mandates only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” Id. Thus, under the Supreme Court’s plain language, the determination in Miller is unlike Graham, insofar as it is a procedural change requiring a sentencing process in criminal law, and not a categorical bar that “placets] *385 beyond the authority of the state the power to regulate certain conduct or impose certain penalties.” Witt, 387 So.2d at 929.
Accordingly, Miller does not warrant retroactive application to Florida juvenile homicide offenders whose convictions and sentences were final as of June 25, 2012, the date Miller was issued. As Geter’s conviction and sentence were final approximately eight years before Miller was decided, the circuit court properly denied Geter’s motion for postconviction relief.
Affirmed.

. Serology tests confirmed the presence of Geter's DNA.

. In Roper, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court invalidated death penalty sentences for all juvenile offenders under the Eighth Amendment's prohibition on cruel and unusual punishment. Following the Roper decision, the Supreme Court, in Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), invalidated life sentences without meaningful opportunity for release for juvenile nonhomicide offenders *377 under the Eighth Amendment’s prohibition on cruel and unusual punishment.

. Gideon, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), held that states must provide counsel to indigent defendants charged with a felony at all stages of the legal proceeding. "The Gideon decision constituted a change of law of such magnitude that it was applied retroactively in order to remedy the basic constitutional injustice of prior felony trials without counsel.” Witt, 387 So.2d at 927. In comparison, the Supreme Court in Linkletter, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), refused to retroactively apply the procedural exclusionary rule *378 adopted in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Id. at 929, n. 26.

. This Court has previously cited numerous Florida Supreme Court decisions that declined to retroactively apply United States Supreme Court decisions that have adopted procedural rules in criminal law. See Fleming, 61 So.3d 399 (rejecting retroactive application of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)); Chandler, 916 So.2d 728 (rejecting retroactive application of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)); Johnson v. State, 904 So.2d 400 (Fla.2005) (rejecting retroactive application of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).