VAN NORTWICK, J,
specially concurring.
Because I conclude that Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 188 L.Ed.2d 407 (2012), is a constitutional determination of fundamental significance, it should be applied retroactively. Accordingly, in my view, Geter v. State, 115 So.3d 375, 2012 WL 4448860 (Fla. 3d DCA 2012), and Gonzalez v. State, 101 So.3d 886 (Fla. 1st DCA 2012), are wrongly decided and the order before us should be reversed. Nevertheless, this panel is bound by our decision in Gonzalez. See Falcon v. State, 111 So.3d 973, 2013 WL 1809742 (Fla. 1st DCA 2013); and Johnson v. State, — So.3d —, 2013 WL 1809685, 38 Fla. L. Weekly D953 (Fla. 1st DCA 2013). Accordingly, I specially concur. I also concur on the certified question. In my view, if Miller applies here, at a minimum Smith’s sentence must be vacated, and the cause remanded for resentencing with Smith’s age at the time of the offenses taken into account in the reconsideration of the appropriate sentence.
In 1998, Patrick Joseph Smith was convicted of first-degree felony murder and robbery with a firearm. He was 17 years of age when the offenses were committed. The evidence adduced at trial showed that Smith brought a gun to the residence of the man he and his associates planned to rob. Another pulled the trigger that launched the fatal shot. Smith’s convictions and his sentence of life imprisonment were previously affirmed by this court. Smith v. State, 746 So.2d 1162 (Fla. 1st DCA 1999).
Thereafter, Smith moved for post-conviction relief on the authority of rule 3.800(a), Florida Rules-of Criminal Procedure, raising two issues. The lower court granted relief as to the first alleged sentencing error raised on the authority of Heggs v. State, 759 So.2d 620 (Fla.2000), but denied relief as to the claim that the life sentence for felony murder is illegal under Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).
In Graham, the United States Supreme Court held that a person may not be sentenced to life imprisonment without possibility of parole for a non-homicide offense committed while a juvenile. In Miller, the United States Supreme Court extended the reasoning in Graham and held that, even when a juvenile has committed a homicide, the juvenile cannot automatically be given a life sentence without the possibility of parole; instead, a life sentence can only be imposed following a deliberation which takes into account the defendant’s youth at the time of the offense. In writing for the majority in Miller, Justice Ka-gan explained the scope of the Miller decision:
[t]he mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. By removing youth from the balance — by subjecting a juvenile to the same life-without-parole sentence applicable to an adult — these laws prohibit a sentencing authority from assessing whether the law’s harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes Graham’s (and also Roper’s) foundational principle: that imposition of a State’s most severe penalties on juvenile offenders cannot proceed as though they were not children.
[[Image here]]
In light of Graham’s reasoning, these decisions too show the flaws of imposing mandatory life-without-parole sentences on juvenile homicide offenders. Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender’s age and the *1060 wealth of characteristics 'and circumstances attendant to it....
# * *
We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.... By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson’s and Miller’s alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in Roper, Graham, and this decision about children’s diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between “the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Roper, 543 U.S. at 573, 125 S.Ct. 1183, 161 L.Ed.2d 1; Graham, 560 U.S. at -, 130 S.Ct. at 2026-2027. Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
132 S.Ct. at 2465-469 (footnotes omitted).
This court has held that Miller is not retroactive. Gonzalez v. State, 101 So.3d 886 (Fla. 1st DCA 2012). In so holding, we relied on Geter v. State, 115 So.3d 375, 2012 WL 4448860 (Fla. 3d DCA 2012). In my opinion, Geter was wrongly decided and, therefore, we erred in relying on that decision.

Miller is a “Development of Fundamental Significance” under Witt

In Geter, the Third District considered the question of whether Miller has retroactive application by applying the test set forth in Witt v. State, 387 So.2d 922 (Fla.1980). The Witt test is the appropriate test; however, the Geter court misapplied the test as set forth in Witt.
In balancing the important consideration of finality in criminal cases against the equally important considerations of fairness with respect to an individual conviction and sentence and uniformity with all comparable convictions and sentences, the Florida Supreme Court set forth in Witt a three-part test which must be satisfied before a decisional change in law will be deemed to have retroactive application. The change of law must (a) emanate from the United States Supreme Court or the Florida Supreme Court; (b) be constitutional in. nature, and (c) constitute “a development of fundamental significance.”
Súbpart (c) of the Witt test is obviously the only subpart at issue with regard to the retroactive application of Miller v. Alabama as Miller emanated from the United States[1] Supreme Court and is constitutional in nature. This third subpart ensures that mere “evolutionary refinements” in the law are not given retroactive application so as to prevent both the unjust disturbance to the finality of a case and the intolerable overburdening of the judicial system. See Witt 387 So.2d at 929-30.
Before setting out this three-part test, the Witt court noted the “relative unsatisfactory body of law” regarding the retroac-tivity of a new rule of law and, without discussing this body of law in detail, the *1061 Witt Court observed that three essential considerations could be gleaned from this “unsatisfactory” case law when passing on the question of whether a new rule of law should be applied retroactively: “(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice.” Id. at 926. These considerations derive primarily from two U.S. Supreme Court decisions, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (hereafter, the Stovall and Linkletter considerations).
After discussing these considerations, the Court in Witt set forth its analysis noting that only cases of major constitutional significance would be subject to retroactive application. The Witt court explained that such major or fundamentally significant constitutional changes generally fall within one of two categories. The first category of major or fundamentally significant constitutional changes
are those changes of law which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties. This category is exemplified by Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), which held that the imposition of the death penalty for the crime of rape of an adult woman is forbidden by the eighth amendment as cruel and unusual punishment.
Witt, 387 So.2d at 929 (emphasis added).
The second category of major or fundamentally significant constitutional changes
are those changes of law which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of Stovall and Link-letter. Gideon v. Wainwright, of course, is a prime example of a law change included within this category.
Id. Thus, the Stovall and Linkletter considerations are the test to be satisfied in order to determine whether a change of law falls within the second category of changes to be applied retroactively. The Stover and Linkletter considerations have no application to the first category. The Witt court explained that “[m]ost law changes of ‘fundamental significance’ will fall within [these] two broad categories-” 387 So.2d at 931.
The Third District in Geter held that the change of law created by Miller fell within the second Witt category. The Geter court reached this conclusion upon characterizing the majority’s decision in Miller as “a procedural decision” that “merely requires consideration of mitigating factors of youth in the sentencing process.” 115 So.3d at 377. The Geter court then applied the Stovall and Linkletter considerations and determined that the Miller decision was not of fundamental significance. Id.
I would respectfully submit that the Third District in Geter mischaracterizes the majority’s holding in Miller. That is, the Third District confused the reason for the holding with the holding itself. In Miller, the U.S. Supreme Court held that a mandatory sentence of life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on “cruel and unusual punishments.” 132 S.Ct. at 2460. This holding renders Miller a case that “placets] beyond the authority of the state the power ... to impose certain penalties.” Witt, 387 So.2d at 929. Thus, the Miller decision falls within the first category of major or fundamentally significant changes *1062 of law as outlined in Witt. As it falls squarely within this first category, there is no need to apply the Stovall and Linkletter considerations to determine whether the Miller decision is within the second Witt category.[1]

Miller, like Graham, is Retroactive

The court in Geter noted that Graham has held to be retroactive, but that such a holding does not in any way contradict the conclusion that, under Witt, Miller is not to be retroactively applied. Observed the Geter court:
Unlike Miller, Graham was a substantive change in law that “placefd] beyond the authority of the state the power to regulate certain conduct or impose certain penalties.” Witt, 387 So.2d at 929. In applying Florida’s retroactivity analysis, Graham was analogous to Coker, insofar as it was a substantive change in criminal law that categorically barred a type of sentencing after conviction for a particular type of crime. Witt, 387 So.2d at 929. Graham prohibits a life sentence without meaningful opportunity for release for juveniles convicted of a nonhomicidal offense. Miller allows a life sentence for a juvenile convicted of a homicidal offense after consideration of mitigating factors of youth. As noted earlier, the Supreme Court explicitly distinguished Miller from Graham, which it referred to as a “categorically bar” [sic] against a penalty for a class of offenders or type of crime. Miller, 132 S.Ct. at 2471. Instead, Miller “mandates only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” Id. Thus, under the Supreme Court’s plain language, the determination in Miller is unlike Graham, insofar as it is a procedural change requiring a sentencing process in criminal law, and not a categorical bar that “placets] beyond the authority of the state the power to regulate certain conduct or impose certain penalties.” Witt, 387 So.2d at 929.
115 So.3d at 384-85.
Miller does not merely mandate a certain process, however, while Graham categorically precludes a certain sentence. Under Miller, a defendant cannot be given a mandatory sentence of life without parole if the defendant was a juvenile when the offense was committed. That is, Miller categorically bans mandatory life sentences for juveniles. Thus, Miller “[p]laces beyond the authority of the state [of Florida] the power to ... impose [a] certain penalt[y]” — mandatory life sentences for juveniles. Witt, 387 So.2d at 929. In the case before us, the trial court was required to sentence the appellant to life without possibility of parole upon his conviction of first degree murder with a firearm. §§ 782.04(1), 775.082(1), Fla. Stat. (1998).[2] Thus, below, appellant was given a mandatory sentence now constitutionally impermissible under Miller. Of course, under Miller, a trial court may still impose a life sentence, provided that the trial court has considered the defendant’s age *1063 in its deliberative process. That mandatory life sentences for offenses committed by juveniles are categorically barred by Miller has been recognized by the Third District in cases which were not final when Miller was decided. See Hernandez v. State, — So.3d —, 2013 WL 1136434, 38 Fla. L. Weekly D660 (Fla. 3d DCA 2013) (“In Miller, the Court held that the Eighth Amendment’s prohibition against cruel and unusual punishments forbids the sentence of life without parole for a juvenile convicted of murder, if the imposition of the sentence is mandatory.... Under Miller, Hernandezs [sic] sentence of life without parole was unconstitutional because it was mandatory: the trial court did not have the opportunity to consider mitigating circumstances, such as age and age-related characteristics, under the sentencing statute.”). The fact that appellant’s sentence was final before Miller was decided does not transform a categorical ban on mandatory life sentences for juveniles into a “process.” Therefore, I do not find persuasive the reasoning by which the Third District distinguished Miller from Graham.
Because Geter, in my view, was wrongly decided, this court should not have followed it in Gonzalez. Correctly applying the test for retroactive application of new decisional law, as set forth in Witt, Miller would apply retroactively, and appellant Smith would be entitled to a new sentencing hearing.

. I also agree with Chief Judge Benton's analysis in his concurring opinion in Falcon, 111 So.3d 973.

. In Florida, first degree murder is a capital felony. § 782.04(1), Fla. Stat. The sentence mandated -by statute upon conviction of a capital felony is death or life without parole. § 775.082(1). Because appellant was a juvenile at the time he committed his offense, he could not be sentenced to death pursuant to Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).