WILSON, Circuit Judge,
dissenting from the denial of rehearing en banc, in which MARTIN, Circuit Judge, joins:
For crimes he committed between the ages of 13 and 17, Michael Morgan was sentenced to mandatory life in prison without the possibility of parole. Such a sentence would be unconstitutional were it handed down today. In Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012), the Supreme Court held that sentences of “mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’ ” This case concerns Morgan’s application to file a second or successive petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. We will grant an application to file a second or successive petition if the *1197 applicant makes a prima facie showing that his second or successive motion contains a claim involving “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2).
In the original panel order, we denied Morgan’s application, holding' that while Miller announced a new rule of constitutional law, the rule was not retroactive to cases on collateral review because it did not “ ‘prohibit! ] a certain category of punishment for a class of defendants.’ ” In re Morgan, 713 F.3d 1365, 1367 (11th Cir.2013) (quoting In re Moss, 703 F.3d 1301, 1303 (11th Cir.2013)). But although the rule enunciated in Moss describes one category of rules that has been held to apply retroactively, Moss’ s rule is not exhaustive; in fact, the Supreme Court has instructed that the true inquiry for determining whether a given rule is retroactive to cases on collateral review hinges upon whether that new rule is procedural or substantive: “New substantive rules generally apply retroactively ...[;] [n]ew rules of procedure ... do not.” Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 2522-23, 159 L.Ed.2d 442 (2004) (emphasis in original). The resolution of Morgan’s application thus turns on whether Miller[1] s rule is substantive or procedural. A majority of the Court today concludes that this question is not sufficiently important to warrant en banc review. I cannot agree. Because I believe this case rqadily presents “a question of exceptional importance” worthy of en banc review, Fed. R.App. P. 35(a)(2), I dissent.
The United States Department of Justice has decided upon a uniform policy—its United States Attorneys will advocate in favor of Millers retroactivity in cases on collateral review all across the country! Government’s Response to Petitioner’s Application for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 at 6-7, Johnson v. United States, No. 12-3744 (8th Cir. Feb. 22, 2013) (“Mille-f s holding that juvenile defendants cannot be subjected to a mandatory life-without-parole sentence' is properly regarded as a substantive rule.”); see Motion of the United States for a Further Extension of Time at 1, Johnson v. United States, No. 12-3744 (8th Cir. Jan. 29, 2013) (“Because the issue has nationwide application, the Department of Justice is formulating the government’s position on retroactivity rather than individual U.S. Attorney’s Offices.”). That is, not even the government wants these juvenile offenders—who are condemned to die in prison pursuant to now-unconstitutional sentencing schemes—deprived of their ability to seek the writ of habeas corpus. See Government’s Response to Petitioner’s Application for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 at 2, Johnson v. United States, No. 12-3744 (8th Cir. Feb. 22, 2013) (“Because the United States agrees that Johnson’s reliance on Miller makes ... a prima facie showing, his motion should be granted and the case certified for filing in the district court.”). If the availability of the writ to Morgan and the hundreds of similarly situated juvenile offenders serving mandatory life-without-parole sentences that would be indubitably unconstitutional were they handed down today is not a question of exceptional importance, I cannot imagine what is.[1]
*1198 Nor is the argument that Miller announces a substantive rule a frivolous one. “A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.” Schriro, 542 U.S. at 353, 124 S.Ct. at 2523. I agree that the rule announced by Miller does not fit neatly within our understanding of a substantive rule. See Teague v. Lane, 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (“[A] new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” (internal quotation marks omitted)). But neither does Miller[1] s rule fit neatly within our definition of a procedural rule. See Schriro, 542 U.S. at 353, 124 S.Ct. at 2523 (explaining that a rule that “requir[es] that a jury rather than a judge find the essential facts bearing on punishment” and other “[rjules that allocate decisionmaking authority in this fashion are prototypical procedural rules”). By altering the range of possible outcomes for a juvenile sentenced to life without parole under a mandatory sentencing scheme, Miller arguably heralds a substantive rule. See id. at 352-53,124 S.Ct. at 2522-23; see also Miller, 132 S.Ct. at 2477 (Roberts, C.J., dissenting, joined by Scalia, Thomas, and Alito, J.J.) (summarizing the majority’s decision as “invoking] [the Eighth] Amendment to ban a punishment” (emphasis supplied)). For example, and as the Supreme Court wrote in Miller itself, in the post -Miller world, “appropriate occasions for sentencing juveniles to this harshest possible penalty [of life without parole] will be uncommon.” See Miller, 132 S.Ct. at 2469. It seems to me that to write off as merely procedural a new rule that will compel a different substantive result—that is, a different, and lesser, sentence—in the majority of cases that will follow would be to stretch the meaning of “procedural” too far. See id. The fact remains that, for a majority of juvenile offenders like Morgan, who have been convicted of crimes that would have previously required that they be incarcerated for the duration of their natural lives, Miller commands a wholly different outcome: whereas before we would lock them up and throw away the key,, now such an outcome will be, in the Supreme Court’s own words, “uncommon.” See id. In my view, we should think long and hard before we dismiss that as a simple matter of “procedure.”
I do not mean to suggest that any rule that is outcome determinative is also a fortiori a substantive rule retroactively applicable to cases on collateral review. As the Supreme Court has made clear, because rules of procedure “merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise,” they have a “speculative connection to innocence” that does not justify retroactive applicability. Schriro, 542 U.S. at 352, 124 S.Ct. at 2523; see Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (“The Teague doctrine is founded on the notion that one of the ‘principal functions of habeas corpus [is] to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.’ ” (quoting Teague, 489 U.S. at 312, 109 S.Ct. at 1076)). And though the Teague doctrine’s original moorings can be found in cases involving guilt or innocence, we have since extended it to cases involving the state’s power to punish. See, e.g., Moss, 703 F.3d at 1303. “Consequently, unless a new rule of criminal procedure is of such a nature that without [it] the likelihood of an accurate conviction [or a constitutional sentence] is seriously diminished, there is no reason to apply the rule retroactively on habeas review.” Bousley, 523 U.S. at 620, 118 S.Ct. at 1610 (citation and *1199 internal quotation marks omitted). But that is exactly my point. Following Miller, the cases in which a juvenile offender can appropriately be sentenced to life without parole will be “uncommon.” See Miller, 132 S.Ct. at 2469. There is nothing “speculative” about the fact that these individuals, judged by today’s standards, would likely receive a lesser sentence. Schriro, 542 U.S. at 352, 124 S.Ct. at 2523. Indeed, because the Supreme Court has told us that life-without-parole sentences will rarely be imposed on juveniles in the wake of Miller, a sentencing scheme that mandated that 100% of those individuals receive life without parole is, to put it mildly, the type of rule that renders “the likelihood of an accurate [sentence] ... seriously diminished.” Bousley, 523 U.S. at 620, 118 S.Ct. at 1610. That is because, were these individuals sentenced today, the likelihood of them receiving the same sentence would be minimal. In that way, Miller arguably announces a substantive rule retroactive to cases on collateral review or, at the very least, a substantive or procedural rule of a different stripe from those we have previously confronted.
In the original panel order rejecting Morgan’s application, the majority relied on the Supreme Court’s statement in Schriro that “rules that regulate only the manner of determining the defendant’s culpability are procedural.” Schriro, 542 U.S. at 353, 124 S.Ct. at 2523 (emphasis in original). That statement proves too much, though, because the rule announced in Miller does not regulate “only the manner of determining the defendant’s culpability.” Id. (emphasis supplied). Miller arguably does more than merely alter the manner of determining an individual’s sentence: in addition to changing the procedure for sentencing juvenile offenders to life without parole from a statutory mandate to an individualized determination made only after considering the nature of the offender and the criminal act, Miller simultaneously alters the standard by which the sentence is judged. See Miller, 132 S.Ct. at 2475. Prior to Miller, a juvenile offender being sentenced for certain crimes would automatically receive life without parole without regard to the “offender’s youth and attendant characteristics.” Id. at 2471. Now, however, those circumstances must be weighed in the balance, and “appropriate occasions for sentencing juveniles to [life without parole] will be uncommon.” See id. at 2469. By making what was once a mandatory outcome an uncommon outcome, the rule does not alter only the manner of making the determination, but also the substance— indeed, the merits—of imposing the sentence. Though we may ultimately determine that this unusual species of constitutional rale is more akin to a procedural rale than to a substantive rule, we should at least do so only after deliberate consideration and discourse, because regardless of the taxonomic classification to which we ultimately assign it, Miller s rale—-and-its application to cases oii collateral review— is an important one.
I reiterate that the merits are not even at issue here—the only question we face is whether Morgan’s application presents a question of exceptional importance worthy of review by the full Court sitting en banc. See Fed. R.App. P. 35(a)(2). A majority of this Court today decides that the issue presented by Morgan’s application— whether juveniles previously sentenced to life in prison without the possibility of parole can avail themselves of the Great Writ to challenge sentences we all agree would be constitutionally flawed if they were handed down today—is not important enough to warrant further discussion. See Miller, 132 S.Ct. 2455, 2469 (holding that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders”). I cannot comprehend why. *1200 There is great confusion amongst the courts of this country as to whether Miller applies retroactively.[2] One Florida court recently certified the question of Miller’s retroactivity to the Florida Supreme Court as “one of great public importance.” Falcon v. State, 111 So.3d 973, 974 (Fla.Dist.Ct.App.2013) (per curiam).[3] And although *1201 Judge Pryor suggests that “the only other [federal] circuit court to have considered the question agrees” that Miller does» not apply retroactively, Concurring Op. of Pryor, J., at 1193 (citing Craig, 2013 WL 69128, at *2), that simply isn’t true. Two separate panels of the Fourth Circuit recently granted motions to file a second or successive habeas petition brought solely on grounds of Miller's retroactivity— grounds identical to those contained in Morgan’s application here. See In re Landry, No. 13-247 (4th Cir. May 30, 2012); In re James, No. 12-287 (4th Cir. May 10, 2013).[4] Moreover, because an application to file a second or successive habeas petition presents a jurisdictional question, above all else, “it is our responsibility to see that [the matter] is decided correctly under the law.” United States v. Smith, 654 F.3d 1263, 1266 n. 1 (11th Cir.2011), vacated on other grounds, 684 F.3d 1364 (11th Cir.2012). Again, my point exactly: because we considered Morgan’s application ex parte, we have yet to even hear from the government in this case.
In addition, the prima facie showing necessary for certification under § 2255(h) merely requires “a sufficient showing of possible merit to warrant a fuller exploration by the district court.” In re Davis, 565 F.3d 810, 816 (11th Cir.2009) (per curiam). Once we make that “limited determination,” “[t]he district court is to decide the [§ 2255(h)] issue[s] fresh, or in the legal vernacular, de novo.” Moss, 703 F.3d at 1303 (internal quotation marks omitted). Therefore, and although Morgan’s position on the retroactivity of Miller may not ultimately prove to be the correct one, it needn’t be for him to achieve § 2254(h) certification.
I end where I began—in my view, there can be little doubt that whether a juvenile offender can attack on collateral review his sentence of mandatory life imprisonment without the possibility of parole—a sentence that would now be constitutionally flawed pursuant to Miller—constitutes “a question of exceptional importance” deserving of en banc review. Fed. R.App. P. 35(a)(2). Indeed, to Morgan and hundreds of similarly situated juvenile offenders sentenced to life without parole who would likely receive a different sentence were they able to collaterally attack their sentences under § 2255, the issue presented here is one of immense proportions.
As a court, we therefore stand at a crossroads: we can either cling to the belief that the government is wrong and *1202 that we have nothing to learn from en banc review, or we can have the parties brief the matter to ensure that we reach the correct decision under the law. The Court today chooses the former course. To me, that the latter route is the better one is self-evident—after all, why should we not take a little extra effort to ensure that we get this one right, at least before we shut the courthouse door on those 336 juveniles currently serving unconstitutional sentences in prisons throughout our circuit? The question is an important one, and we have nothing to lose by hearing from all the parties before we make a decision on such a weighty issue. Of one thing we can be sure, Michael Morgan—and the hundreds of other inmates serving sentences of mandatory life without parole meted out pursuant to now-unconstitutional sentencing schemes—isn’t going anywhere anytime soon.

. As of April 20, 2011, there were 336 juvenile offenders serving life without parole within our circuit. See Sentencing Juveniles, N.Y. Times, Apr. 20, 2011, http://www.nytimes. com/interactive/2011/04/20/us/juveniles.html? ref=u&_r=0 (explaining that there are 266 such offenders in Florida, 62 in Alabama, and 8 in Georgia). Of those 336 offenders, 17 of them are 13- or 14-year-olds. Id.

. Compare In re Landry, No. 13-247 (4th Cir. May 30, 2012) (granting motion to file second or successive habeas petition brought solely on the ground that Miller announces a new rule retroactively applicable to cases on collateral review), In re James, No. 12-287 (4th Cir. May 10, 2013) (same), Hill v. Snyder, No. 10-14568, 2013 WL 364198, at *2 n. 2 (E.D.Mich. Jan. 30, 2013) ("[T]his court would find Miller retroactive on collateral review, because it is a new substantive rule, which generally apply retroactively.” (internal quotation marks omitted)), People v. Cooks, No. 1-11-2991, 2013 WL 1195435, at *4 (Ill.App.Ct. Mar. 22, 2013) (holding that Miller is retroactive), People v. Williams, 367 Ill.Dec. 503, 982 N.E.2d 181, 196 (Ill.App.Ct.2012) (holding that Miller applies retroactively), People v. Morfin, 367 Ill.Dec. 282, 981 N.E.2d 1010, 1022 (Ill.App.Ct.2012) (“[W]e find that Miller constitutes a new substantive rule.”), State v. Lockheart, 820 N.W.2d 769 (Iowa Ct.App.2012) (unpublished table decision) (vacating life-without-parole sentence imposed for a murder that occurred 29 years ago in light of Millet), State v. Simmons, 99 So.3d 28 (La.2012) (per curiam) (remanding for resentencing on collateral review in light of Miller), State v. Williams, 108 So.3d 255 (La.Ct.App.2013) (explaining that "Miller is retroactive to cases that were final in Louisiana at the time the decision in Miller was rendered”), Commonwealth v. Cunningham, 51 A.3d 178 (Pa.2012) (per curiam) (granting appeal on the question of Miller’s retroactive applicability under Pennsylvania law), and Ex parte Maxwell, No. AP-76964, 2013 WL 458168 (Tex.Crim.App. Feb. 6, 2013) (per curiam) (granting appeal on the question of Miller's retroactivity), with Craig v. Cain, No. 12-30035, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013) (per curiam) (not retroactive), People v. Carp, 298 Mich.App. 472, 828 N.W.2d 685, 711 (2012) (holding that-Miller’s rule is procedural and therefore not retroactively applicable to cases on collateral review), and Geter v. State, No. 3D12-1736, 115 So.3d 375, 375-77, 2012 WL 4448860, at *1 (Fla.Dist.Ct.App. Sept. 27, 2012) (same).

. Judge Pryor submits that I "confuse[j the rules of retroactivity that apply on federal collateral review with the rules of retroactivity that apply to state collateral review” because many of the cases cited in the footnote above "were decisions by state courts on state collateral review.” Concurring Op. of Pryor, J., at 1192-93. Again, that simply isn’t the case. It is true that state courts can choose the principles that govern retroactivity in their own state collateral proceedings, see Danforth v. Minnesota, 552 U.S. 264, 280-81, 128 S.Ct. 1029, 1041-42, 169 L.Ed.2d 859 (2008), but many state courts have adopted Teague’s substantive/procedural dichotomy for assessing Whether or not a new rule should be given retroactive effect. See, e.g., Danforth v. State, 761 N.W.2d 493, 497-99 (Minn.2009) (adopting Teague’s formulation on remand from the Supreme Court’s decision in Danforth v. Minnesota, and explaining that many states have adopted Teague "primarily based on the important policy interest in finality,” or because they "valued uniformity between state and federal rules”). It should come as no surprise, then, that several of the cases cited in the preceding footnote expressly employ the Teague mode of analysis in determining whether Miller should apply retroactively. See, e.g., Cooks, 2013 WL 1195435, at *4 (applying Teague to find Miller retroactive); Carp, 828 N.W.2d at 708-09 (finding that Miller is procedural under the Teague framework). Certainly Judge Pryor would not quarrel with the proposition that, in our dual system of coequal sovereigns, state courts are just as capable as federal courts of faithfully applying the rules set down by the Supreme Court to the cases that come before them. See Tafflin v. Levitt, 493 U.S. 455, 465-66, 110 S.Ct. 792, 798-99, 107 L.Ed.2d 887 (1990) (explaining the Court’s "full faith in the ability of state courts to handle the complexities of" the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, a complex federal scheme, and noting that "[t]o hold otherwise would ... denigrate the respect accorded coequal sovereigns”); cf. Pompey v. Broward County, 95 F.3d 1543, 1550 (11th Cir.1996) (“The state courts are courts of equal dignity with all of the federal 'inferior courts’—to use the Framers’ phrase—and state courts have the same duty to interpret *1201 and apply the United States Constitution as we do.”). That being so, there is no reason why the analysis of a state court ¿pplying Teague shouldn’t be just as persuasive as that of any other federal court whose decisions do not bind us.

. Given that a "court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing” of retroactivity or of evidence showing the applicant's innocence, 28 U.S.C. § 2244(b)(3)(C) (emphasis supplied), Judge Pryor is wrong to state that "[djictum in the footnote of a single opinion of a federal district court” provides the only support for Morgan’s application, Concurring Op. of Pryor, J., at 1193. The holdings of two separate orders from the Fourth Circuit permit the applicants in those cases to file second or successive petitions. See In re Landry, No. 13-247 (4th Cir. May 30, 2012); In re James, No. 12-287 (4th Cir. May 10, 2013). Those holdings are permitted under federal law only if the court of appeals first concludes that the applicant has made a prima facie showing that he satisfies the requirements of § 2255(h). The only issue before us is whether Morgan has made such a prima facie showing. So, if we are counting cases in the courts of appeals, as Judge Pryor seems to suggest we ought to be doing, there are actually more cases supporting Morgan's application than opposing it. Compare In re Landry, No. 13-247 (4th Cir. May 30, 2012), and In re James, No. 12-287 (4th Cir. May 10, 2013), with Craig, 2013 WL 69128, at *2.